921 So.2d 882 (2006)
In re Judge Charles ELLOIE.
No. 2005-O-1499.
Supreme Court of Louisiana.
January 19, 2006.
*884 Office of Special Counsel, Steven Robert Scheckman, for Judiciary Commission.
Ernest L. Jones, for Judge Elloie.
Nancy E. Rix, Commission Counsel.

*885 ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
TRAYLOR, Justice.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that respondent, Judge Charles Elloie, presiding judge of Section "A" of the Orleans Parish Criminal District Court, State of Louisiana, be publicly censured and ordered to reimburse to the Judiciary Commission the costs incurred in the investigation and prosecution of this case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and law, and determined that Respondent violated Canons 1 and 2A of the Code of Judicial Conduct and engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of La. Const. Art. V, § 25 C. After a thorough review of the facts and law in this matter, we find clear and convincing evidence sufficient to support the charges filed against Judge Charles Elloie and conclude that the Judiciary Commission's recommendation of discipline should be accepted.

FACTS AND PROCEDURAL HISTORY
Judge Charles Elloie was elected to the bench on November 5, 1996. He took his first judicial oath of office on January 1, 1997 and has served continuously as a judge since that time.
By letter dated August 15, 2002, then-Orleans Parish District Attorney Harry F. Connick lodged a complaint against Judge Elloie with the Judiciary Commission ("Commission"). Judge Elloie was notified of the complaint by the Office of Special Counsel's preliminary inquiry letter dated September 6, 2002. Judge Elloie responded to the allegations of the complaint by letter dated September 23, 2002. The Commission authorized an investigation and notified Judge Elloie of the investigation by letter dated November 18, 2002.

Formal Charge 0213
On December 1, 2003, following the investigation, Formal Charge No. 0213 was filed concerning Judge Elloie. Formal Charge No. 0213 alleged:

Charge I
A. You, Judge Charles Elloie, in State v. Brenda Brown, No. 362-965 (Orleans Parish Criminal District Court) a matter assigned to a division of court other than your own, pursuant to orders dated July 26, 2001 and October 2, 2001, granted a Motion to Expunge and a Motion to Dismiss the Prosecution in favor of the defendant, disbarred attorney Brenda Brown, without giving the required notice to the District Attorney's office, without a contradictory hearing as required by law and in contravention of the law which prohibits expungement in a case where the defendant pled guilty to negligent homicide.
1. There are no minutes in the court record memorializing your actions and rulings, in State v. Brenda Brown, No. 362-965, on July 26, 2001 and October 2, 2001. The Clerk of Court's Docket Master is also silent regarding your actions and rulings, in State v. Brenda Brown, No. 362-965, on July 26, 2001 and October 2, 2001.
B. You, Judge Charles Elloie, in State v. Harden Reeves, No. 353-788 *886 (Orleans Parish Criminal District Court) a matter assigned to a division of court other than your own, pursuant to an order dated September 28, 2001, granted a Motion to Expunge and a Motion to Dismiss the Prosecution in favor of the defendant, without giving the required notice to the District Attorney's Office, without a contradictory hearing as required by law and in contravention of the law which prohibits expungement in a case in which the defendant pled guilty of {sic; to} possession of cocaine.
1. There are no minutes in the court record memorializing your actions and rulings, in State v. Harden Reeves, No. 353-788, on September 28, 2001. The Clerk of Court's Docket Master, in State v. Harden Reeves, No. 353-788, does not reflect your actions and rulings until "2/28/2002".
C. You, Judge Charles Elloie, therefore violated LSA-R.S. 44:9 and C.Cr.P. art. 893.
As a result of the foregoing factual allegations, Formal Charge No. 0213 alleged that Judge Elloie violated Canons 1 and 2 of the Code of Judicial Conduct, engaged in willful misconduct relating to his official duty and in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const. Art. V, § 25 C.
In addition, Formal Charge No. 0213 further alleged a record of prior disciplinary complaints which may be considered in connection with the present charges, pursuant to La. Sup.Ct. Rule XXIII, § 3(d).[1]
D. That you, Judge Elloie, have been previously warned and placed on notice by the Judiciary Commission concerning deficiencies relative to your conduct as a judge, including:
1. You, Judge Elloie, were previously the subject of Formal Charges, Nos. 0111-0115 and 0124, before the Commission. Charge 0111 and 0122 {sic; 0112} alleged you made false statements concerning a campaign opponent. Charge 0113 alleged you failed to report campaign contributions from Ike Spears and Pampy's Inc. Charge 0114 alleged that you failed to recuse in the case of State v. Logan, No. 398-468 though you were a witness in the case and a motion to recuse had been filed. In the same case, charge 0115 alleged your {sic} were rude and discourteous at sentencing to the murder victim's family. Finally, charge 0124 alleged you employed your wife as your minute clerk.
a. Thereafter, on September 28, 2000, you Judge Elloie and your counsel, and the Office of Special Counsel, also entered into a Statement of Stipulated Uncontested Material Facts concerning these charges.
b. On October 20, 2000, you, Judge Elloie entered into a Deferred Recommendation of Discipline Agreement (DRDA) concerning Formal Charges, Nos. 0111-0115 and 0124. By agreement you, Judge Elloie have been "on probation for a period of three years commencing November 1, 2000." (DRDA at p. 2, ¶ 1.) You, Judge Elloie, were also admonished by the Commission for some of your conduct. (DRDA ¶ 6).
Judge Elloie filed an answer to the charge on February 6, 2004, denying that he violated LSA-R.S. 44:9, La.C.Cr.P. art. 893, the Code of Judicial Conduct or La. Const. Art. V, § 25 C. Judge Elloie and *887 the Office of Special Counsel thereafter submitted a Statement of Stipulated Uncontested Material Facts to the Commission on December 14, 2004.[2] Although Judge Elloie admitted he performed the actions and rulings alleged in the Formal *888 Charge, he continued to deny that he violated any statutes, the Code of Judicial Conduct, or La. Const. Art. V, § 25 C.

Proceedings Before the Commission
The Commission conducted a hearing on January 21, 2005. Judge Elloie and Judge Calvin Johnson, another judge of the Orleans Parish Criminal District Court, were the only witnesses to testify. On June 6, 2005, following the hearing, and after consideration of post-hearing memoranda of law, the Commission entered its Findings of Fact and Conclusions of Law and Recommendation for Discipline ("Findings") into the record and submitted the case to this court.
In its Findings, the Commission adopted the stipulations entered into by Judge Elloie and the Office of Special Counsel and made additional findings of fact with regard to the two instances alleged in the Formal Charge:[3]

1. State v. Brenda Brown, No. 362-965 (Orleans Parish Criminal District Court)
The criminal record of this case was admitted as an exhibit in this judicial disciplinary proceeding. The Commission found, based on its review of the criminal court record, that Brenda Brown was initially charged with the second degree murder of Brenda Gillis. Her case was ultimately assigned to Section "E" of the Orleans Parish Criminal District Court, Judge Calvin Johnson, presiding. Brown, a former Orleans Parish Assistant District Attorney, entered into a plea bargain with the District Attorney's office supervised by former-District Attorney Harry F. Connick, and pleaded guilty to negligent homicide, a felony, pursuant to this agreement.[4]
Judge Johnson's original sentence in the matter was reversed on appeal as being too harsh. Ultimately, on March 20, 1995, Brenda Brown was sentenced by Judge Johnson to four (4) years at hard labor in the Department of Corrections, which was suspended, and five (5) years active probation, which included these special conditions: (1) that she serve nine (9) months in the parish prison, with credit for time served; (2) that she serve the following two (2) years and four (4) months of weekends in parish prison; and (3) that she perform 2000 hours of community service.
The criminal court record reflects that Brown did not explicitly plead guilty under the provisions of La.C.Cr.P. art. 893, regarding the suspension of sentence and probation in felony cases, nor did Judge Johnson impose the sentence and probation pursuant to that article. The Commission found that the criminal court record shows that Judge Johnson did not defer, in whole or in part, the imposition of sentence.[5]
In 2001, counsel for Brown, Ike Spears and Glenda Spears, moved for the expungement of the record in her case. The Motion for Expungement stated erroneously that the charges had been dismissed pursuant to La.C.Cr.P. art. 894, which relates to the suspension of sentence and probation in misdemeanor cases.
*889 According to Judge Elloie, attorney Ike Spears approached him in open court in an off-the-record discussion at the bench and asked if Judge Elloie would sign the expungement motion and a Motion to Dismiss the Prosecution. Mr. Spears told Judge Elloie that Judge Johnson, to whom the case was assigned, had indicated that he would not sign the motions. According to Mr. Spears, Judge Johnson told Mr. Spears he could try to get another judge to expunge the record. Judge Elloie did not confirm this discussion between Mr. Spears and Judge Johnson. Judge Elloie testified that he accepted Mr. Spears' statement without checking with Judge Johnson because Mr. Spears was an officer of the court and because the information could easily be checked.
The criminal court record shows that Judge Elloie signed the expungement order on July 26, 2001, which moved for the destruction of the criminal records. The order which accompanied the motion ordered that Brown's arrest record and guilty plea be "cancelled and expunged" and that a copy of the motion and order be served upon the Clerk of Orleans Parish Criminal District Court, the Superintendent of the New Orleans Police Department, the District Attorney of Orleans Parish, the Louisiana State Police and the FBI. On October 2, 2001, Judge Elloie signed another expungement order, which also moved for destruction of records. The order instructed that the records be "cancelled and expunged" as well as ordering that a copy of the motion and order be served on the Louisiana Department of Public [sic; Safety] and Corrections and the Louisiana Department of Parole and Probation.
The Commission found that there was at that time an Orleans Parish Criminal District Court rule governing "transfers" of cases from the originally assigned section of court to another. Criminal District Court Rule V(B), in effect in 2001, stated that
any case of any class may be transferred as often as may be necessary for the proper expedition of the business of the court either upon motion of the state or the defendant ... provided that the judges of the sections from which and to which the case is transferred consent.
The Commission found that the local rule was not followed in the Brown expungement.
The transcript shows that Judge Elloie agreed that no minute entry or order reflected that Judge Johnson agreed to the transfer. Yet, Judge Elloie believed that the entire case was transferred to him, in spite of the fact that the procedure set forth in the local rule had not been followed. Judge Elloie denied any violation of the local rule.
Judge Johnson testified that he had no recollection of telling Mr. Spears that he could seek out another judge to sign the expungement order but did not doubt that he may have said it. Judge Johnson, to whom the case was assigned and who was most knowledgeable about the case, refused to sign the expungement motion.[6] Judge Johnson testified there was a long-standing custom at Criminal District Court for lawyers to seek out judges who would sign an expungement order because some *890 of the judges had a policy of never expunging records. Judge Johnson denied transferring the case to Judge Elloie.
Judge Elloie stipulated that he signed the motions at issue, that he did not give the District Attorney's office notice of the motions and that he failed to hold a contradictory hearing on the expungement. Judge Elloie agreed that no minute entry was made and nothing was placed on the record to memorialize his actions and rulings, although he was aware of a local court rule which required that a minute entry be made for all motions made in open court.[7]
Both Judge Elloie and Judge Johnson testified that, by custom, no contradictory hearing was held on an expungement motion in Orleans Parish Criminal District Court,[8] although both agreed the "custom" does not comply with the requirements of La. R.S. 44:9.[9] In support of the long-standing nature of this custom, Judge Elloie further maintained that no contradictory hearing was conducted even when he practiced criminal law prior to his election to the bench. Judge Elloie also testified as to his understanding that no expungement would actually occur until all of the law enforcement agencies who were served with the motion and order declined to oppose the expungement.[10]
The criminal record in Brown shows that on December 7, 2001, the District Attorney's office filed a Motion and Order to Set Aside Expungement before Judge Johnson. This motion alleged four separate grounds upon which the expungement granted by Judge Elloie was illegally obtained: (1) Brown did not enter her guilty plea under La.C.Cr.P. art. 893 or any other Louisiana article or statute which would allow expungement; (2) there was no contradictory hearing as required by La. R.S. 44:9; (3) Judge Elloie had no jurisdiction to sign the order in a Section "E" case; and (4) the expungement was granted under La.C.Cr.P. art. 894, applicable only to misdemeanor offenses and inapplicable where the underlying offense is a felony. By order signed that same date, Judge Johnson ordered that the prior expungement be set aside.

2. State v. Harden Reeves, No. 353-788 (Orleans Parish Criminal District Court)
The criminal record of this case was also admitted as an exhibit in this judicial disciplinary proceeding. The Commission found, based on its review of the criminal proceedings in this matter, that the defendant, Harden Reeves, pleaded guilty as charged on January 31, 1992 to possession *891 of cocaine, in violation of La. R.S. 40:967. This criminal matter was assigned to Section "I" of the Orleans Parish Criminal District court, Judge Ray Bigelow, presiding. For this felony conviction, Reeves was sentenced to five (5) years at hard labor in the Louisiana Department of Correction, which was suspended, and two (2) years active probation with the special condition that he seek drug treatment.
The criminal record reflects that Reeves did not plead guilty under the provisions of La.C.Cr.P. art. 893, nor did the sentencing court impose the sentence and probation pursuant to that article. The criminal record further reflects that on January 15, 1993, Reeves' probation was revoked and his sentence was made executory.
According to Judge Elloie's testimony, the expungement request in this case came from Reverend Zebadee Bridges, a local minister.[11] Reverend Bridges approached Judge Elloie as he was leaving his chambers as he left the court. Reverend Bridges told Judge Elloie that Judge Bigelow, to whose section the case was assigned, was not there that day. Judge Elloie did not recall whether Reverend Bridges told him that Judge Bigelow authorized Judge Elloie to handle this matter, but the judge recalled Reverend Bridges stating that Judge Bigelow had expunged another matter for this defendant.
The record reflects that, without determining whether Judge Bigelow was indeed absent, and apparently without checking any other information regarding this criminal conviction, Judge Elloie signed the order of expungement on September 28, 2001.
Judge Elloie conceded that he inadvertently signed the Reeves expungement request and that Reeves was not eligible for expungement because Reeves had not completed his probation satisfactorily. However, Judge Elloie claimed that he had been presented with two motions with regard to Reeves and that he thought he was signing a motion for an expungement regarding the district attorney's refusal of a drug paraphernalia charge, and not for the possession of cocaine charge. Judge Elloie confirmed there was no prior notice of the expungement order and that the District Attorney subsequently opposed the expungement.
On March 7, 2002, the District Attorney's office filed a Motion to Set Aside Expungement before Judge Bigelow, alleging: (1) Reeves did not enter his guilty plea under La.C.Cr.P. art. 893; (2) the fact that Reeves' probation was revoked on January 15, 1993 and his sentence was made executory precluded Reeves from expungement under La.C.Cr.P. art. 893; (3) no contradictory hearing was held in violation of La. R.S. 44:9; and (4) Judge Elloie had no jurisdiction over a matter assigned to Section "I". By order signed the same date, Judge Bigelow ordered the "motion be granted for the reasons listed above."
The Commission found that the New Orleans Police Department complied with Judge Elloie's initial expungement order in the Reeves case and had expunged Reeves' record.
In addition to submitting supplemental findings of fact to this court, the Commission submitted conclusions of law applicable to the matter. After reviewing both the stipulated facts and the facts found by the Commission, the Commission concluded *892 that Judge Elloie violated La. Const. Art. V, § 25 C, by engaging in willful misconduct relating to his official duty, and engaging in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute, as well as Canons 1 and 2 A of the Code of Judicial Conduct. The Commission recommended to this court that Judge Elloie should receive a public censure and that Judge Elloie should be ordered to reimburse the Commission's costs in the amount of $689.50.

LAW AND DISCUSSION
This court has original jurisdiction in judicial disciplinary proceedings under the authority of La. Const. Art. V, § 25 C, which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
Under its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976. This Code of Judicial Conduct is binding on all judges, and violations of its Canons, without more, may serve as the basis for the disciplinary action provided for by La. Const. Art. V, § 25 C. In re: Davis, 2003-2801 p. 14 (La.2/4/04), 865 So.2d 693, 703; In re: Quirk, 97-1143 p. 4 (La.12/12/97), 705 So.2d 172, 176; In re: Marullo, 96-2222 p. 3 (La.4/8/97), 692 So.2d 1019, 1021; In re: Decuir, 95-0056 p. 7 (La.5/22/95), 654 So.2d 687, 692.
The burden of proof in a judicial disciplinary case requires "[t]he charge or charges against a judge must be proved by clear and convincing evidence before the court may censure, suspend with or without salary, remove from office or involuntarily retire a judge." In re: Johnson, 96-1866 p. 7 (La.11/25/96), 683 So.2d 1196, 1199.
Judge Elloie is accused of violating Canons 1 and 2 A of the Code of Judicial Conduct and the constitutional standard established in La. Const. Art. V, § 25 C. Canon 1 of the Code of Judicial Conduct "requires a judge to observe high standards of conduct to uphold the integrity and independence of the judiciary"[12] and provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further *893 that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2 A of the Code of Judicial Conduct "requires a judge to avoid both actual impropriety and the appearance of impropriety"[13] and provides:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Though Judge Elloie has stipulated to many of the facts in this case, he has steadfastly refused to admit that he engaged in any wrongdoing whatsoever. Judge Elloie denies that any of his actions were in violation of and/or prohibited by law, specifically La. R.S. 44:9 and La. C.Cr.P. art. 893. He further denies that he violated Canons 1 and 2 A of the Code of Judicial Conduct or engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. Const. Art. V, § 25 C.

Legal Error
The Commission concluded that Judge Elloie's conduct in granting expungement motions without conducting a contradictory hearing, in violation of La. R.S. 44:9, and by expunging records in cases where sentencing had not been deferred under La.C.Cr.P. art. 893(D), was legal error.
In 2001, when the motions to expunge were presented to Judge Elloie, La. R.S. 44:9 provided in pertinent part:
* * *
B. (1) Any person who has been arrested for the violation of a felony offense or who has been arrested for a violation of R.S. 14:34.2, R.S. 14:34.3, or R.S. 14:37 may make a written motion to the district court for the parish in which he was arrested for the expungement of the arrest record if:
(a) The district attorney declines to prosecute, or the prosecution has been instituted, and such proceedings have been finally disposed of by acquittal, dismissal or sustaining a motion to quash; and
(b) The record of arrest and prosecution for the offense is without substantial probative value as a prior act for any subsequent prosecution.
(2) If, after a contradictory hearing with the district attorney and the arresting law enforcement agency, the court finds that the mover is entitled to the relief sought for the above reasons, it shall order all law enforcement agencies to expunge the record of the same in accordance herewith. However, nothing in this Paragraph shall limit or impede the authority under law to consider prior arrests or convictions in pursuing prosecution under multiple offender provisions or impede the investigation of any law enforcement official seeking to ascertain or confirm the qualifications of any person for any privilege or license authorized by law.
C. (1) Any person who has been arrested for the violation of a state statute which is classified as a felony may make a written motion to the district court for the parish in which he was arrested for expungement of the arrest record if the time limitation for the institution of prosecution on the offense has expired, and no prosecution has been instituted.
(2) If, after a contradictory hearing with the arresting agency, the court finds that the mover is entitled to the relief sought for any of the above *894 reasons, it shall order all law enforcement agencies to expunge same in accordance herewith. However, the arresting agency may preserve the name and address of the person arrested and the facts of the case for investigative purposes only.
* * *
E. (1)(a) No court shall order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure.
(b) After a contradictory hearing with the district attorney and the arresting law enforcement agency, the court may order expungement of the record of a felony conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure. Upon the entry of such an order of expungement, all rights which were lost or suspended by virtue of the conviction shall be restored to the person against whom the conviction has been entered, and such person shall be treated in all respects as not having been arrested or convicted unless otherwise provided in this Section or otherwise provided in the Code of Criminal Procedure Articles 893 and 894.
* * *
G. "Expungement" means removal of a record from public access but does not mean destruction of the record. An expunged record is confidential, but remains available for use by law enforcement agencies, criminal justice agencies, the Louisiana State Board of Medical Examiners, the Louisiana State Board of Nursing, the Louisiana State Board of Dentistry or the Louisiana State Board of Examiners of Psychologists. (Emphasis added)
The applicable provisions of La. R.S. 44:9 clearly provided that, prior to expungement of a felony arrest or conviction, a contradictory hearing must be held. A contradictory hearing must be held pursuant to La. R.S. 44:9(B)(2) when expungement is sought for a felony arrest that did not result in prosecution and/or conviction if the district attorney declines to prosecute, La. R.S. 44:9(B)(1)(a), or for a felony arrest where the prosecution was instituted, but the proceedings were finally disposed of by acquittal, dismissal, or the sustaining of a motion to quash, La. R.S. 44:9(B)(1)(a). A contradictory hearing must be held pursuant to La. R.S. 44:9(C)(2) for a felony arrest where the time limit for prosecution has expired pursuant to La. R.S. 44:9(C)(1). Specifically pertinent to our present discussion, a contradictory hearing must be held with the district attorney and the arresting law enforcement agency pursuant to La. R.S. 44:9(E)(1)(b) prior to the expungement of the record of a felony conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure. Further, no court has the authority to order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure. La. R.S. 44:9(E)(1)(a).
In both the Brown and Reeves expungement matters, Judge Elloie did not convene contradictory hearings before he ordered the expungement of the defendants' felony convictions, in violation of the clear and unambiguous language of La. R.S. 44:9. Judge Elloie stipulated that no contradictory hearings were held in these matters prior to the granting of the expungements. At the hearing, Judge Elloie conceded that his actions were contrary to the provisions of La. R.S. 44:9. Thus, Judge Elloie has admitted to committing *895 legal error with regard to the provisions of La. R.S. 44:9.
Whether Judge Elloie committed legal error regarding the eligibility of either Brown and/or Reeves for dismissal of their prosecutions and eligibility for expungement of their felony conviction and arrest records under Article 893 or any other provision is more problematic. La. C. Cr.P. art. 893 is entitled "Suspension and deferral of sentence and probation in felony cases" and presently provides:
A. When it appears that the best interest of the public and of the defendant will be served, the court, after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole. The court shall not suspend the sentence of a conviction for a crime of violence as defined in R.S. 14:2(13)(a), (b), (c), (d), (e), (i), (j), (k), (l), (m), (n), (o), (p), (q), (r), (t), (v), (w), (x), (bb), (cc), or (dd), or of a second conviction if the second conviction is for a violation of R.S. 14:73.5, R.S. 14:81.1, or R.S. 14:81.2. The period of probation shall be specified and shall not be less than one year nor more than five years. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.
B. If the sentence consists of both a fine and imprisonment, the court may impose the fine and suspend the sentence or place the defendant on probation as to the imprisonment.
C. Except as otherwise provided by law, the court shall not suspend a felony sentence after the defendant has begun to serve the sentence.
D. (1)(a) When it appears that the best interest of the public and of the defendant will be served, the court may defer, in whole or in part, the imposition of a sentence after conviction of a first offense noncapital felony under the conditions set forth in this Paragraph. When a conviction is entered under this Paragraph, the court may defer the imposition of sentence and place the defendant on probation under the supervision of the division of probation and parole.
(b) The court shall not defer a sentence under this provision for an offense or an attempted offense which is defined or enumerated as a crime of violence under R.S. 14:2(13) or a sex offense as defined by R.S. 15:541(14.1), involving a child under the age of seventeen years or for a violation of the Uniform Controlled Dangerous Substances Law punishable by a term of imprisonment of more than five years or for a violation of R.S. 40:966(A), 967(A), 968(A), 969(A), or 970(A).
(2) Upon motion of the defendant, if the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relating to cumulation of offenses. Dismissal under this Paragraph shall occur only once with respect to any person.
E. Nothing contained herein shall be construed as being a basis for destruction of records of the arrest and prosecution *896 of any person convicted of a felony.
Article 893 in its present form makes a distinction between suspension of the imposition or execution of sentence and the deferment of the imposition of sentence. Paragraphs A-C relate to a court's ability to suspend a criminal sentence, in whole or in part. Paragraph D relates to a court's ability to defer a criminal sentence and the conditions under which such a deferred sentence may serve as the basis for a motion to dismiss the prosecution.
The Office of Special Counsel argues, and the Commission finds, that the felony convictions of Brown and Reeves were not eligible for an Art. 893 dismissal because their sentences were imposed and suspended, but not deferred under Paragraph D.[14] Office of Special Counsel argues that Art. 893(D), in effect as written since 1996, and which has retroactive effect back to August 15, 1995, applies only to those defendants whose sentences are deferred. Consequently, the Office of Special Counsel argues that under the clear language of the statute, a dismissal can occur only in those cases in which the sentence was deferred.
The determination of whether either Brown or Reeves was eligible for a dismissal of their prosecutions under Art. 893 cannot be made upon the recitation of those few facts, which only underscores why a contradictory hearing with the District Attorney's office and the law enforcement agencies was so necessary. While the argument of the Office of Special Counsel may be correct when applied to criminal defendants whose crimes were committed subsequent to August 15, 1995, the Office of Special Counsel, and the Commission, failed to consider the fact that both Brown and Reeves committed their crimes prior to August 15, 1995.
Brown was charged with committing the offense of second degree murder, later amended to negligent homicide, on January 3, 1993. Brown pleaded guilty to negligent homicide on June 14, 1993, and was ultimately sentenced on March 20, 1995. Harden Reeves was charged with committing the offense of possession of cocaine on November 14, 1991. Reeves pleaded guilty as charged on January 31, 1992, and was sentenced that same date.
At the time of the commission of the offenses committed by Brown and Reeves, Art. 893 did not provide for the deferment of the imposition of sentence, the subject of the current Paragraph D and the basis for the argument of the Office of Special Counsel. Instead, the law authorized a judge to set aside a criminal conviction and dismiss the prosecution of a first offense felony after the successful completion of a probationary period. Effective September 6, 1991, former Art. 893(E) provided:
When the imposition of sentence has been suspended by the court for the first conviction only, as authorized by this Article, and the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution and the dismissal of the prosecution shall have the same effect as acquittal, except that said conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relation to cumulation of offenses. Dismissal under this Paragraph shall occur *897 only once with respect to any person.[15]
Paragraph E was later re-designated as Paragraph D.[16] The legislature subsequently excluded from the benefits of this provision those persons convicted of a sex offense as defined by La. R.S. 15:542(E) involving a child under the age of seventeen years.[17] Finally, in 1995, the legislature repealed former Paragraph D, effective August 15, 1995.[18]
In 1996, the legislature amended Art. 893 to enact a new Paragraph D, introducing the concept of deferment of imposition of sentence after conviction of a first offense noncapital felony. The amendment, retroactively effective to August 15, 1995, also rewrote the article heading, which had previously read "Suspension of sentence and probation in felony cases," to include the concept of deferment newly added to the article.[19]
Considering the general principle that "the law in effect at the time of the commission of the offense is determinative of the penalty which is to be imposed upon the convicted accused," the question which should have been determined by Judge Elloie at the contradictory hearing mandated by La. R.S. 44:9 was whether the current version of Art. 893 applied to determine the eligibility of Brown or Reeves for dismissal of their convictions, and ultimately for expungement of their criminal records, or whether an earlier version of Art. 893 applied. See State v. Parker, XXXX-XXXX p. 9-10 (La.4/14/04), 871 So.2d 317, 322; State v. Sugasti, XXXX-XXXX p. 4 (La.6/21/02), 820 So.2d 518, 520; State v. Narcisse, 426 So.2d 118, 130-131 (La. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). This court has previously rejected the argument that the general principle applies only to a sentence for a particular offense and has held this principle applicable to sentencing enhancement provisions. See Parker, XXXX-XXXX p. 15, 871 So.2d at 325. However, this court has not squarely addressed the issue presented here.
Since this court has already found that Judge Elloie violated the law with regard to La. R.S. 44:9, it is unnecessary for us to additionally determine whether he violated La.C.Cr.P. art. 893, as well. The fact that Judge Elloie failed to consider the above-described factual and legal issues which were presented by the Brown and Reeves expungement and dismissal motions emphasizes the acute need for the contradictory hearing mandated by La. R.S. 44:9 in order to determine whether dismissal and expungement are authorized under the law for each individual criminal defendant. These challenging legal issues presented here demanded more than an off-the-record bench conference or a passing exchange in a hallway.
Due to the posture of this case as a judicial disciplinary matter, we decline to decide the applicability of pre- or post-August 15, 1995 provisions of Art. 893(D) to individual criminal defendants when that issue is squarely presented to this court.[20] We note parenthetically, however, *898 that the criminal record in Reeves shows that Harden Reeves was ineligible for dismissal of his prosecution under either version of Art. 893(D), since his probationary period was not satisfactorily completed, but instead was subsequently revoked. We also note that the motions signed in Brown show that Judge Elloie did not grant Brown's dismissal motion and subsequent expungement under the authority of Art. 893, but instead under the provisions of La.C.Cr.P. art. 894. Since La.C.Cr.P. art. 894 is applicable only to misdemeanor offenses, it cannot serve as authority for a motion to dismiss the prosecution of a felony such as negligent homicide.
Additional legal errors are found in the motions signed by Judge Elloie in the Brown matter. The Motion for Expungement moves for the "destruction of any and all records relating to [Brown's] arrest and conviction." The applicable provision of La. R.S. 44:9(E)(1)(a) prohibits the destruction of any felony record. Further, the Order attached to the Motion to Dismiss Prosecution and Set Aside Conviction orders that the conviction be set aside and the prosecution be dismissed "in accordance with L.S.A.-R.S. 40:984." La. R.S. 40:984 relates to the powers of enforcement personnel with regard to controlled dangerous substances and is entirely inapplicable to the order to dismiss the prosecution and set aside the conviction. These additional legal errors show, at the least, that Judge Elloie did not carefully review the motions or orders presented to him.
In addition, by acting upon motions in cases assigned to other sections of Orleans Parish Criminal District Court without verifying or obtaining the consent of the assigned judges, Judge Elloie violated the rules regarding the random allotment of cases[21] and the local rules of court regarding the transfer of cases. Although Judge Elloie testified he believed the Brown matter had been transferred to him, but the Reeves matter had not been, the record is clear that the proper procedures were not followed in either case. Consequently, no transfer of the cases ever occurred, as proved by the fact that the judges in the sections where the cases were assigned subsequently reversed Judge Elloie's actions.
Finally, a local rule of the Orleans Parish Criminal District Court, of which Judge Elloie was aware, required that a minute entry be made reflecting any motion made in open court. By failing to act on these motions in open court, Judge Elloie prevented and/or delayed[22] the timely creation of minute entries which memorialized his actions.

Legal Error Constitutes Judicial Misconduct
Having found that legal error occurred, we must next determine whether the circumstances presented here are such that the legal error constitutes grounds for a finding of judicial misconduct. In re: Quirk[23] scrutinized this issue of first impression in Louisiana and cautioned:

*899 It is with great care that we address this issue, for subjecting a judge to discipline because of an erroneous legal ruling has the potential to trammel the exercise of judicial discretion and stifle the independence of the judiciary.
Nevertheless, Quirk held that
a judge may be found to have violated La. Const. Art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error.[24]
We hold that legal error committed by Judge Elloie in this judicial disciplinary matter rises to the level of judicial misconduct. La. R.S. 44:9 is clear and unambiguous. Prior to the granting of a motion to expunge a felony arrest or conviction record, a contradictory hearing must be held. Judge Elloie admitted his actions in granting such motions without notice or hearing were in violation of this clearly expressed law. Moreover, Judge Elloie admitted that he never held a contradictory hearing on expungement motions, which constitutes a pattern or practice of legal error.
This court also takes particular note in this instance of the manner in which Judge Elloie violated this express law. Judge Elloie ruled on motions for cases not assigned to his section of court without obtaining the consent of the assigned judges, in violation of local court rules.[25] Judge Elloie did not rule on these motions in open court, where a record of his actions could be made and placed on the record. Instead, these motions were ruled upon off-the-record at a bench conference and in a hallway of the courthouse. The handling of judicial matters "off-the-record" gives at least the appearance of impropriety and lessens the public's confidence in the integrity and impartiality of the judiciary. Moreover, Judge Elloie ruled on these motions without checking the criminal records at issue or engaging in the proper legal analysis to determine whether these defendants were eligible for dismissal and expungement.
Equally disturbing, Judge Elloie's testimony showed that he failed to comprehend the significance and effect of his own judicial actions. He blithely assumed that others, specifically the very law enforcement agencies which he was ordering to perform the expungement of records, would notice and correct any error he made in the determination of whether the criminal defendants were eligible for expungement of their records. He also maintained that another check upon his actions could be made by the District Attorney's office, by their filing a motion to set aside his initial expungement, as occurred in these cases. He failed to understand that it was his duty to make the determination of eligibility for dismissal or expungement.
In Quirk, we acknowledge that legal error will generally not be grounds for judicial misconduct. Instead, legal error is normally the subject of appeal:
Our three-tiered system of judicial review necessarily exists, in part, to reverse *900 legal errors made below. In this manner, the vast majority of legal errors are more properly addressed on appeal and do not amount to judicial misconduct.[26]
However, Judge Elloie's actions in failing to give notice, in failing to hold a contradictory hearing and in ruling on motions off-the-record prevent the very appellate review by which legal error may be corrected.
In each instance under consideration here, Judge Elloie showed a disregard for the established procedural rules by which his decisions should have been made. Such an attitude cannot prevail, as "[o]ur judicial system operates on `rules of law' of which judges and lawyers must abide." In re: Justice of the Peace Landry, XXXX-XXXX p. 11 (La.6/29/01), 789 So.2d 1271. Procedural rules are necessary, not only to avoid the appearance of impropriety or partiality on the part of the judge, or forum shopping on the part of the litigant, but also to promote the efficient operation of the court system.[27]
In arguing that any legal errors do not rise to the level of judicial misconduct, Judge Elloie presents several considerations in his defense. We will address each of these briefly.

Custom
Although the Commission found that Judge Elloie's reliance on the "custom" of not conducting contradictory hearings on expungement motions acted as a mitigating factor, we find that this cannot be so. The defense that a long-standing procedure was utilized cannot prevail when that procedure is in direct contravention to express written statutory law, about which there can be no misunderstanding or confusion.
Judge Elloie testified at the Commission hearing that no contradictory hearings with the district attorney were held on expungement motions in Orleans or Jefferson Parishes when he practiced criminal law, prior to his election to the bench. He also stated that he knew of no contradictory hearings being held on expungement motions in Orleans Parish Criminal District Court. Later in his testimony, however, he conceded that several judges complied with the mandatory procedures of La. R.S. 44:9.[28] Rather than reflecting a long-standing custom, the failure to hold contradictory hearings on expungement motions in the past which served as a basis for Judge Elloie's characterization of a "custom" may have reflected the state of the law at that earlier time.
Although La. R.S. 44:9 was enacted in 1970, the statute initially applied only to the expungement of misdemeanor arrest *901 records.[29] The statute did not include the expungement of felony arrest records until 1981. At that time, a defendant could file a motion for expungement if the district attorney joined in the motion.[30] No contradictory hearing was necessary because the district attorney had to join in the motion to expunge. Subsequent amendments removed the requirement of joinder with the district attorney but required contradictory hearings with the arresting law enforcement agency prior to expungement.[31] Not until a 1995 amendment did La. R.S. 44:9 require a contradictory hearing with the district attorney and the arresting law enforcement agency prior to the expungement of felony arrest and conviction records.[32] Thus, the requirement for a contradictory hearing with the district attorney did not become effective until August 15, 1995. Judge Elloie took the bench a year and a half later.
After the 1985 amendment, any judge who failed to conduct contradictory hearings with the affected agency prior to expungement of felony arrest or conviction records did so in violation of La. R.S. 44:9. Judge Elloie, when he assumed the bench in 1997, was not following long-established custom in failing to hold the mandated contradictory hearings, but rather he (and any other judges at Orleans Parish Criminal District Court who followed this "custom") failed in their duty to be informed of the applicable law. Thus, Judge Elloie's defense that he was following the "custom" of the court fails completely and cannot serve as a mitigating factor.

Public Perception
Judge Elloie argued that he did not violate the constitutional provisions that address public perception and the requirement for persistent and public acts. He testified that "the public" would not have known anything about his expungement practices if then-District Attorney Connick had not reported them. Judge Elloie also maintained that if Judge Johnson had expunged Brown's record, this would not have become a public matter.
Judge Elloie views the constitutional provisions too narrowly. The concept of "the public" for purposes of the constitutional provisions does not encompass only those persons outside of the judicial process. "The public" also includes lawyers, court personnel, parties involved in litigation and all those people who come into contact with the judiciary. When there is a perception that a judge will participate in forum shopping, or that the proper procedures do not have to be followed, then the judicial office is brought into disrepute.[33]

*902 Motive of Complainant

Judge Elloie asserts that the complaint filed by former District Attorney Connick was motivated by a political vendetta. As found by the Commission, "the motive of the complainant who reports judicial misconduct is irrelevant. The critical inquiry is whether sanctionable ethical misconduct actually occurred." As the Commission suggested, if District Attorney Connick had a political vendetta against Judge Elloie, Judge Elloie's best defense would have been to obey the ethical rules that bind him as a judge and to follow clearly and unambiguously expressed statutory law.

Intent or Effect of Misconduct
Judge Elloie testified that he did not believe he committed judicial misconduct for two reasons. First, he did not intend to violate the judicial canons or the constitution. Second, the actions he performed were not irrevocable, and were, in fact, subsequently set aside.
Judge Elloie's understanding of the ethical precepts contained in the Canons of Judicial Conduct and the Louisiana Constitution is in error. There is no subjective intent requirement for judicial misconduct. An act does not have to be intentional to support judicial discipline. In re: Hunter, XXXX-XXXX p. 16 (La.8/19/02), 823 So.2d 325, 336 ("[A] judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute."). Moreover, as found by the Commission, the fact that other judges or other circumstances may correct the erroneous or legally unsupportable judicial action does not absolve the respondent judge from the consequences of his wrongful acts.
Based on the foregoing, we find that there is clear and convincing evidence that Judge Elloie violated Canons 1 and 2 A of the Code of Judicial Conduct and La. Const. Art. V, § 25 C, as set forth in the Formal Charge.

Appropriate Penalty
In re: Chaisson[34] described the following non-exclusive factors to be used in determining the appropriate sanction in a judicial discipline matter:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) *903 whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
As to (a) and (b), Judge Elloie's misconduct evidences a pattern of misconduct in the Brown and Reeves cases. Further, Judge Elloie himself testified that he has never followed the law of La. R.S. 44:9.
As to (c) and (d), Judge Elloie's misconduct occurred in the courtroom or with respect to his official judicial duties.
As to (e), Judge Elloie acknowledged that the facts which support the Formal Charge, as alleged, occurred. However, he steadfastly maintained that his actions did not constitute judicial misconduct. In the Reeves matter, he claimed that a simple legal error occurred. In the Brown matter, he claimed he followed the long-standing custom of the court. Judge Elloie did not acknowledge or comprehend that his actions violated the ethical requirements of judges as required by the judicial canons and the constitution.
As to (f), Judge Johnson testified that the rules of criminal district court were changed to conform to the requirements of La. R.S. 44:9. However, there was no testimony regarding whether Judge Elloie intends to change or modify his conduct.
As to (g), Judge Elloie was elected to the bench on November 5, 1996. He took his first judicial oath of office on January 1, 1997, and has served continuously since that time. Judge Elloie was not a new judge or unfamiliar with his judicial role at the time of the two instances supporting the Formal Charge. Moreover, Judge Elloie has great familiarity with criminal law, as this was his area of practice prior to election to the bench.
As to (h), Judge Elloie was previously the subject of Formal Charges Nos. 0111-0115 and 0124.[35] He was still serving a three-year probationary period at the time of the actions leading to the present charge.[36]
As to (i), Judge Elloie's actions undermined the judicial process in Louisiana. In two cases which were not assigned to his section of court and where he had no authority or jurisdiction to act, he failed to comply with the law and ordered expungements and dismissals of prosecutions in two serious felony cases without notice, without convening mandatory contradictory hearings, and without making the legal and factual inquiry as to whether expungement and dismissal were authorized by law.
As to (j), there is no evidence that Judge Elloie exploited his position to satisfy his personal desires in this case.
This court held previously held that "the primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline a judge." In re: Ellender, *904 2004-2123 p. 9 (La.12/13/04), 889 So.2d 225, 231; In re: Marullo, 96-2222 p. 4 (La.4/8/97), 692 So.2d 1019, 1023. The Commission was not able to reach a consensus whether Judge Elloie was in bad faith as to the proven conduct. Some members found bad faith because they believed Judge Elloie's primary motive was to assist political friends; however, other members accepted his assertions that he followed practices established many years before he took office. In order to protect the public, the Commission recommended that Judge Elloie be publicly censured.
In addition, the Commission recommended that it be allowed to recover the costs associated with the investigation in this matter. Pursuant to La. Sup.Ct. Rule XXIII, § 22,[37] the Commission has the right to recover costs, subject to this court's review. See In re: Daniels, 340 So.2d 301, 309 (La.1976) and Decuir, 95-0056 p. 10, 654 So.2d at 693. A copy of the invoice of the court reporting service for the transcription of the January 21, 2005 hearing in the amount of $689.50 is attached to the Certificate of Costs in the record of these proceedings.

CONCLUSION
Based on our review of the Chaisson factors and the law applicable to this case, we find that the misconduct in this case justifies the recommended penalty of a public censure and the imposition of costs.

DECREE
For the foregoing reasons, it is ordered that Judge Charles Elloie be, and he hereby is, publicly censured for violation of Canons 1 and 2 A of the Code of Judicial Conduct and La. Const. Art. V, § 25 C. Costs of $689.50 incurred in the investigation and prosecution of the case are to be reimbursed by respondent.
JOHNSON, J., concurs.
NOTES
[*] Retired Judge Philip C. Ciaccio, assigned as Justice Pro Tempore, sitting for Associate Justice Catherine D. Kimball.
[1] La. Sup.Ct. Rule XXIII, § 3(d) provides:

Closed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings.
[2] I. THE STIPULATED MATERIAL FACTS

The pleadings, exhibits and admissions on file in this cause reveal the following stipulated uncontested material facts:
A. General Material Facts
1. Judge Charles Elloie was elected to the bench on November 5, 1996. He took his first judicial oath of office on January 1, 1997 and has served continuously since that time.
2. Judge Elloie has fully cooperated with the Office of Special Counsel during the investigation of this matter.
B. Procedural Background
3. This charge arose out of complaint from Harry F. Connick, District Attorney, dated August 15, 2002.
4. Judge Elloie was notified of the complaint by the Office of Special Counsel's preliminary inquiry letters dated September 6, 2002.
5. Judge Elloie responded to the allegations in the complaints by letter dated September 23, 2002.
6. The Commission authorized an investigation and notified Judge Elloie of the investigation by letter dated November 18, 2002.
7. On December 2, 2003, Charge No. 0213 was filed concerning Judge Elloie. Judge Elloie filed an answer to the charge on February 3, 2004. All discovery, exhibit and witness lists have been exchanged.
C. Material Facts Relative to Charge 0213
8. Charles Elloie, in State v. Brenda Brown, No. 362-965 (Orleans Parish Criminal District Court) a matter assigned to a division of court other than his own, pursuant to orders dated July 26, 2001 and October 2, 2001, granted a Motion to Expunge and a Motion to Dismiss the Prosecution in favor of the defendant, disbarred attorney Brenda Brown.
a. No notice was provided to the District Attorney's office by Judge Elloie. No contradictory hearing was held by Judge Elloie prior to the granting of these motions.
b. There are no minutes in the court record memorializing Judge Elloie's actions and rulings, in State v. Brenda Brown, No. 362-965, on July 26, 2001 and October 2, 2001. The Clerk of Court's Docket Master is also silent regarding Judge Elloie's actions and rulings, in State v. Brenda Brown, No. 362-965, on July 26, 2001 and October 2, 2001.
9. Judge Charles Elloie, in State v. Harden Reeves, No. 353-788 (Orleans Parish Criminal District Court) a matter assigned to a division of court other than his own, pursuant to an order dated September 28, 2001, granted a Motion to Expunge and a Motion to Dismiss the Prosecution in favor of the defendant.
a. No notice was provided to the District Attorney's Office by Judge Elloie. No contradictory hearing was held by Judge Elloie prior to the granting of these motions.
b. There are no minutes in the court record memorializing Judge Elloie's actions and rulings, in State v. Harden Reeves, No. 353-788, on September 28, 2001. The Clerk of Court's Docket Master, in State v. Harden Reeves, No. 353-788, does not reflect Judge Elloie's actions and rulings until "2/28/2002".
10. Judge Elloie has been previously warned and placed on notice by the Judiciary Commission concerning deficiencies relative to his conduct as a judge, including:
a. Judge Elloie was previously the subject of Formal Charges, Nos. 0111-0115 and 0124, before the Commission.
b. On September 28, 2000, Judge Elloie and his counsel, and the Office of Special Counsel, entered into a Statement of Stipulated Uncontested Material Facts concerning Formal Charges, Nos. 0111-0115 and 0124, before the Commission.
c. On October 20, 2000, Judge Elloie entered into a Deferred Recommendation of Discipline Agreement (DRDA) concerning Formal Charges, Nos. 0111-0115 and 0124. By agreement, Judge Elloie was "on probation for a period of three years commencing November 1, 2000." (DRDA at p. 2, ¶ 1.) Judge Elloie was also admonished by the Commission for some of his conduct as alleged in the formal charges. (DRDA ¶ 6).
[3] In addition to the additional findings found by the Commission, other evidence and testimony adduced at the hearing will be discussed within this section of the opinion.
[4] The criminal court record shows that Brenda Brown pleaded guilty on June 14, 1993 to an amended bill of information which charged her with negligent homicide.
[5] As will be discussed infra, deferral of the imposition of sentence was not authorized as a sentencing option at that time.
[6] According to Judge Johnson, "this is probably the only instance when I did not sign an expungement motion on behalf of a defendant [who was eligible]." Vol. 1, p. 150(158). The record in this case consists of two volumes and exhibits. Volume 1 contains the transcript of the hearing before the Commission. Because the transcript is a compressed transcript, each page consisting of four pages of transcription, both the volume page number and the compressed page number in parenthesis will be provided.
[7] The record contains a copy of the local rule of court for the Orleans Parish Criminal District Court, effective September 1, 1994, which states that "a minute entry shall be made reflecting any motion made in open court in any case in the Criminal District Court, including but not limited to bond modification hearings." Vol. 2, p. 299.
[8] Judge Johnson testified that he has since changed his procedure to solicit input from the District Attorney's office prior to granting expungement motions.
[9] Judge Elloie, when asked if he still held the position that he complied with the law in the Brown and Reeves cases consistent with Canon 2 A in light of this admission, stated:

"let me move from between that rock and a hard place where your question tried to place me. I know what 44:9 says. I know what 44:9(e)(1)(b) says, but I'm telling you it's not done. I'm telling you it's not done." Vol. 1, p. 128(72).
[10] According to Judge Elloie, the expunging law enforcement agencies were the ones who decided whether expungement was proper. He relied on them to refuse the expungement order if an error had been made as to a defendant who was not eligible for expungement of their records.
[11] Judge Elloie initially maintained that the expungement request came from the defendant himself.
[12] Johnson, 96-1866 p. 8, 683 So.2d at 1199.
[13] Johnson, 96-1866 p. 8, 683 So.2d at 1200.
[14] The Office of Special Counsel additionally argued that Reeves was not eligible because he did not successfully complete his probationary period.
[15] See Acts 1991, Nos. 89 and 91.
[16] See Acts 1994, 3rd Ex.Sess., No. 100.
[17] See Acts 1994, 3rd Ex.Sess., No. 123.
[18] See Acts 1995, No. 1251.
[19] See Acts 1996, 1st Ex.Sess., No. 5.
[20] The appellate cases relied on by Office of Special Counsel, even those considering offenses committed prior to August 15, 1995, fail to discuss the effect of the 1996 amendment, retroactive to August 15, 1995, which changed the law. See Turner v. James, 37,405 (La.App. 2 Cir. 2/27/03), 840 So.2d 662, writ denied, XXXX-XXXX (La.3/3/03), 839 So.2d 20; State v. Tumblin, XXXX-XXXX (La.App. 5 Cir. 2/23/04), 868 So.2d 902; State v. Oliver, 38,520 (La.App. 2 Cir. 5/12/04), 874 So.2d 365; State v. Hodge, 38,796 (La.App. 2 Cir. 8/18/04), 880 So.2d 983.
[21] See State v. Sprint Communications Co., L.P., 96-3094 p. 5 (La.2/7/97), 699 So.2d 1058, 1063; State v. Reed, 653 So.2d 1176 (La.1995); State v. Simpson, 551 So.2d 1303, 1304 (La.1989).
[22] The parties stipulated that a minute entry in the Reeves case was eventually placed on the record approximately five months after Judge Elloie's actions were taken.
[23] In re: Quirk, 97-1143 p. 6 (La.12/12/97), 705 So.2d 172, 177.
[24] Quirk, 97-1143 p. 11, 705 So.2d at 180-181.
[25] There was testimony at the hearing that the local rules of court were subsequently changed. According to the new rule, when a judge in a section is not able to handle a matter assigned to that section, the matter must go to a specifically predetermined alternate section. Attorneys and litigants can no longer present the matter to a judge of their own choosing within that court.
[26] Quirk, 97-1143 p. 7, 705 So.2d at 178.
[27] The possibility for confusion in judicial matters in the absence of procedural rules was discussed at the hearing:

Commission member: Do you believe that Judge Elloie is equal in authority over your court to you?
Judge Johnson: Sure.
Commission member: Well, you can't overrule him and he can't overrule you if you're equal in authority?
Judge Johnson: Absolutely.
Commission member: Well, if that is the case, then if all the judges are equal with respect to the case, then why obey the second order? Why would there ever be any reason for the law enforcement agency to obey your order? Vol. 1, p. 156(182).
[28] Judge Elloie testified: "In this jurisdiction and in the 24th [JDC], you're not going to find one judge  well, you might, but I'll take that back because, many of them have been elected, you know, since  subsequent to my election  holding contradictory hearing where there's a minute entry and it's done in open court in that particular manner...." Vol. 1, p. 128(71).
[29] See Acts 1970, No. 445.
[30] See Acts 1981, No. 936.
[31] See Acts 1985, No. 852 and Acts 1989, No. 606.
[32] See Acts 1995, No. 295.
[33] The layman-member of the Commission reacted strongly to the testimony of judges regarding the procedures in existence in the Orleans Parish Criminal District Court:

Commission member: What is the  what are the judges guided by? Are they guided by law? Are they guided by tradition, custom? I'm confused because I don't know. Let me ask you very specifically. This Brown case was your case, allotted to you randomly, I guess?
Judge Johnson: Absolutely.
Commission member: But it is your case and you are the  you are the boss of that case judicially?
Judge Johnson: Uh-huh (affirmative response.)
Commission member: As long as it's in the parameters of the trial court, I guess?
Judge Johnson: Yes, sir.
Commission member: Now, I'm a layman.
Judge Johnson: Yes, sir, that's correct.
Commission member: If that is your case and a lawyer comes to you and asks you for something in your case and you say I'm not going to do that, but  and I don't {sic; know} whether you volunteered this or not and you can't probably tell me because it's been so long  but it appears to me that if you would allow some other judge in that court to do something to your case that you're not willing to do, it appears to me that there's got to be some sort of communication between you and that other judge or that other  I don't know. It just  it doesn't seem conscionable to me that that's the way the mop flops wherever you are.
[Judge Johnson explained that it was not uncommon in the Orleans Criminal District Court for a lawyer to find a judge who would sign an expungement order when the judge who whom the case was assigned was known not to sign expungement orders]
Commission member: Well, I'll say this and I'll quit. As an old school teacher, this is like saying to me, I thought the child, I gave him the test, I graded the exam, gave him a D, but he came back to me and said, well, I think I want more than that, would you give me an A. And I'd say, no, but it's all right to take it down to the other teacher and if that teacher wants to change the grade, fine. I'll just  it doesn't hold water. Vol. 1, p. 153-154(170-173).
[34] In re: Chaisson, 549 So.2d 259, 266 (La. 1989).
[35] We note that one of the previous disciplinary charges against Judge Elloie also involved attorney Ike Spears. Although Judge Elloie was questioned as to whether his granting of the expungement and dismissal motions was related to a political or personal motive, we find there was not clear and convincing evidence sufficient to draw that conclusion.
[36] Judge Elloie's period of probation from the prior disciplinary matter commenced on November 1, 2000.
[37] La. Sup.Ct. Rule XXIII, § 22 provides as follows:

The office of special counsel shall file an itemized cost statement with the judiciary commission in any case in which the commission convenes a hearing. In cases where the commission recommends the discipline of a judge, the commission shall review counsel's cost statement and shall recommend to the court that all or any portion of the costs incurred by the office of special counsel, as well as costs the commission has incurred, be taxed against the judge. The commission's recommendation shall be included in the record filed in this court in the form of an itemized cost statement. The court, in its discretion, may tax all or any portion of the costs recommended by the commission.