JOHNSON, Justice.
 
 [1]
 

 11 This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (“Commission”) that Judge Donald R. Johnson (“Judge Johnson”) of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, be publicly censured and ordered to reimburse the Commission for costs incurred in the investigation and prosecution of this case. After a review of the record, we find that Judge Johnson’s conduct violated Canons 1, 2 A, 3 A(l) and 5 B(2) of the Code of Judicial Conduct, as well as Louisiana Code of Criminal Procedure arts. 895 and 895.1. Pursuant to Louisiana Constitution art. V, Section 25(C). We additionally find that public censure is warranted.
 

 
 *427
 
 FACTS AND PROCEDURAL HISTORY
 

 Judge Johnson first assumed judicial office in 1993, when he was elected judge of Baton Rouge City Court. In 1999, he was elected to the 19th Judicial District Court where he is currently a sitting judge.
 

 By
 
 en banc
 
 order of November 15, 1992, the 19th Judicial District Court created a Drug Court, to which all drug offenses were assigned. This court was supervised by a succession of District Judges, including Judges Foster Sanders, Robert Downing, Frank Saia, and William Morvant, before Judge Johnson was assigned the Drug Court in 2003. The Drug Court was originally created to facilitate the progression of drug cases through the judicial system, and developed into a court that focused on rehabilitation as well as judicial economy.
 

 |2This Drug Court was not formally set up as a “treatment court,” but there was evidence that Judge Johnson, and some of his predecessors did attempt to emphasize drug counseling or treatment as a condition of probation. This division of court has now been terminated by subsequent rule of the 19th Judicial District judges, and a drug treatment court program as envisioned under La. R.S. 13:5301,
 
 et seq.,
 
 has been established. That court is now presided over by Judge Anthony Marabel-la.
 

 In January 2005, Doug Moreau, the District Attorney for East Baton Rouge, Parish, reported to the Office of Special Counsel (“OSC”) that Judge Johnson had established a pattern of ordering defendants in Drug Court to pay fines to third parties unrelated to their cases, as opposed to ordering that defendants’ fines be paid into the Criminal Court Judicial Expense Fund (the District Attorney’s Office was a recipient of money from the fund). Judge Johnson was notified of this complaint via preliminary letter sent by the Commission, dated January 25, 2005, to which he submitted a timely response.
 

 In February 2005, Leu Anne Lester Greco, General Counsel for the East Baton Rouge Parish Sheriffs Office, reported to the OSC that Judge Johnson was diverting fines from the Judicial Expense Fund’s statutorily designated recipients (including the Sheriff and District Attorney), to other entities designated by Judge Johnson. Enclosed with Ms. Greco’s letter was a copy of a newspaper article published in
 
 The Advocate,
 
 a Baton Rouge newspaper, on February 10, 2005, that outlined Judge Johnson’s “fine policy” and suggested that “such payments for fines in criminal court might not be allowed by Louisiana law.” Judge Johnson was notified of this complaint by the Commission via preliminary letter, dated March 3, 2005. Judge Johnson submitted a final response, addressing both complaints, on May 10, 2005, wherein he advised OSC that his predecessors on the 19th Judicial District Court had | ?,“assessed fines, or awarded financial assessments as conditions of probation to non-profit organizations and/or public agencies.” He opined that the complaints were “susceptible to racial, personal and subjective overtures,” in that he is the only former Drug Court Judge whom the District Attorney has charged with wrongful conduct and violations of the Canons of the Code of Judicial Conduct.
 

 The Commission authorized an investigation and notified Judge Johnson of the same by letter dated May 24, 2005. On January 27, 2006, Formal Charge No. 0266 was filed, alleging in pertinent part, that:
 

 A. You, Judge Donald R. Johnson, failed to follow and comply with established Louisiana statutory law and misused the prestige and authority of your judicial office to advance the private interests of various charities and organizations, by ordering defendants before
 
 *428
 
 your court to pay fines in the [cases listed therein] and in the following amounts to not-for-profit or other organizations as itemized ...; and
 

 B. Your foregoing conduct was not authorized as a matter of law, including by La. R.S. 15:571.11(A)(1), La.C.Cr.P. arts. 895.1 and 895.4 and La. R.S. 13:1000.4.
 

 Judge Johnson, through his counsel, answered and filed a response to Formal Charge 0266 on March 8, 2006. Judge Johnson alleged that the complaints against him were filed in retaliation because he did not order money to be paid to the judicial fund or to the sheriff, for costs, as is permitted by La.C.Cr.P. arts. 895.1(B)(2) and (3).
 

 On February 15, 2006, Judge Timothy Kelley, Chief Judge of the 19th Judicial District Court for the Parish of East Baton Rouge, reported to the Commission’s Chief Executive Officer, Dr. Hugh M. Collins, that between October 17, 2005, and February 15, 2006, Sarah Holliday was a full-time employee of the 19th Judicial District Court, designated as Judge Johnson’s judicial assistant. During that same time period, Ms. Holliday was also employed on a full-time basis by the Field | ¿Operations Department of the United States Small Business Administration, Disaster Assistance Office. Further, Judge Kelley advised that Judge Johnson knew of Ms. Holliday’s employment outside of the court and authorized it. In response to Judge Kelley’s inquiry, Judge Johnson admitted that he “approved a flexible documented work schedule for Ms. Holliday.”
 

 Judge Kelley suggested that Ms. Holli-day’s dual employment violated La. R.S. 42:63,
 
 [2]
 
 which makes it illegal for any employee of the State or a political subdivision of the State to simultaneously maintain employment with an agency of the federal government. Additionally, Judge Kelley opined that because Judge Johnson had been signing monthly verifications stating that Ms. Holliday had worked sufficient time at her state job to qualify for payment of her salary, that this could be violative of La. R.S. 14:134 (Malfeasance in Office) and/or La. R.S. 14:138 (Public Payroll Fraud). Finally, Judge Kelley advised that the court’s personnel committee had unanimously determined that Ms. Holliday should be terminated, and informed Judge Johnson of that fact in writing. Thereafter, Judge Johnson informed Judge Kelley that Ms. Holliday was submitting her resignation letter. Judge Johnson was notified of this complaint by the Commission via preliminary letter, dated February 22, 2006.
 

 On July 24, 2007, Formal Charge 0284 was filed, alleging in pertinent part, that:
 

 A. You, Judge Donald R. Johnson, condoned and permitted an employee on your personal staff, Sarah Holliday, who was your Judicial Assistant, to engage in conduct that' violated Louisiana’s Dual Office holding laws, La. R.S. 42:61-66 ...; and
 

 B. You, Judge Donald R. Johnson, for the months of October 2005 through January 2006, signed verifications stating that Ms. Holliday “worked sufficient number of hours during [the month] to perform her assigned job duties and responsibilities” |Bwhen in fact she did not work a sufficient number of hours to be paid for full-time employment ...
 

 Judge Patrick Schott (Ret.) was appointed Hearing Officer to conduct proceedings pursuant to Supreme Court Rule XXIII, § 29(b). The Hearing Officer convened a
 
 *429
 
 hearing and took testimony on May 15,16, 17, and June 2, 2008. Following the hearing, the Hearing Officer filed a report with the Commission containing Proposed Findings of Facts and Conclusions of Law. The Hearing Officer concluded that:
 

 A)The Office of Special Counsel proved by clear and convincing evidence that Judge Johnson did not comply with the provisions of La.C.Cr.P art. 895(A)(7)
 
 [3]
 
 when he ordered defendants to pay money to organizations named in Formal Charge 0266. Although the term “aggrieved party” is not defined for purposes of La. C.Cr.P. art. 895, the term “victim” is defined for purposes of the Crime Victims Reparations Act, La. R.S. 46:1801 et. seq.,
 
 [4]
 
 Judge Johnson and his counsel have cited no case or statutory law that has interpreted La.C.Cr.P. art. 895(A)(7) to mean that the “aggrieved party” is the community in which the crime was committed or society as a whole. Based on La. C.C. art. 9, the clear wording of La.C.Cr.P. art. 895(A)(7), and this Court’s interpretation of who is an aggrieved party in
 
 State v. Labure,
 
 427 So.2d 855 (La.1988), the Hearing Officer suggested that the expansive interpretation of La.C.Cr.P. art. 895(A)(7) urged by Judge Johnson is legally incorrect.
 

 |rJB) The Office of Special Counsel proved by clear and convincing evidence that when Judge Johnson ordered defendants to pay money to organizations cited in Formal Charge 0266, he did not comply with the provisions of La.C.Cr.P. art. 895 that permit a court to impose “specific conditions reasonably related to his rehabilitation” on a defendant who is placed on probation. “The purpose in ordering these fines was
 
 not to rehabilitate a particular defendant,
 
 but to assist [the recipient] organizations in running their programs.” (TRII 171 In. 10-14) (Emphasis added.)
 

 C) The Hearing Officer found that none of the organizations met the criteria of La.C.Cr.P. art 895.1(B)(7) which permits a court to require, as a condition of probation, that a defendant pay money to the court’s indigent defender program, to the criminal court fund, to the sheriff and the clerk of court, to a law enforcement agency in certain drug cases, to the victim of the defendant’s crime, and/or to a crime stoppers organization.
 
 [5]
 

 
 *430
 
 D) The Hearing Officer found that as to Charge 0284, Judge Johnson did not violate La. 14:138(A), and he did not commit public fraud.
 
 [6]
 
 The Hearing Officer concluded that the Office of Special Counsel proved by clear and convincing |7evidence that Ms. Holliday violated La. R.S. 42:63(A)(1) by holding full-time temporary employment with the government of the United States at the same time that she held full time employment in the judicial branch of the Louisiana state government as Judge Johnson’s judicial assistant. The Hearing Officer also found that the Office of Special Counsel proved by clear and convincing evidence that Judge Johnson approved of Ms. Holliday’s violation of La. R.S. 42:63(A)(1).
 

 E) The Hearing Officer concluded that as to Formal Charge 0284, Judge Johnson violated Canon 1 and Canon 2, including Canon 2 A of the Code of Judicial Conduct, and that these violations may subject him to discipline for, among other things, “persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.... ” La. Const. Art. V, § 25(C).
 

 The Commission ordered Judge Johnson to appear on September 19, 2008, to answer questions from the Commission, and to make any statement he desired regarding the Formal Charges and the Hearing Officer’s findings and conclusions. Thereafter, the Commission issued subpoenas, as permitted by La. Sup.Ct. Rule XXIII, § 29(f)(2), to three witnesses who had testified before the Hearing Officer for questioning before the Commission; ultimately, only Sarah Holliday and Judge Johnson were called to testify before the Commission. Judge Johnson’s counsel, Ms. Craft, avers that she did not receive adequate notice identifying the witnesses called to testify before the Commission, and also contends that she was not permitted to question Ms. Holliday. Although Ms. Craft objected to this Court to the legitimacy of the proceedings, and to the Commission’s authority to re-call witnesses who had previously testified before the Hearing Officer, Judge Johnson did not make an objection asserting the denial of his right to question Ms. Holliday before the Commission. Following the Hearing, the Commission affirmed the findings and | ^conclusions of the Hearing Officer and recommended to this Court on October 3, 2008, that Judge Johnson be publically censured and ordered to reimburse the Commission’s costs.
 

 DISCUSSION
 

 This Court is vested with exclusive original jurisdiction in judicial disci
 
 *431
 
 plinary proceedings by La. Const. Art. V, § 25(C). This Court has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission.
 
 In re King,
 
 2003-1412 (La.10/21/03), 857 So.2d 432, 445.
 

 This Court, pursuant to its supervisory authority, adopted the Code of Judicial Conduct, effective January 1, 1976, as amended July 8, 1996. The Code is binding on all judges, and violations of its Canons may serve as the basis for the disciplinary action provided for by La. Const, art. 5, § 25(C).
 
 In re Jefferson,
 
 1999-1313 (La.1/19/00), 753 So.2d 181;
 
 In re Bowers,
 
 98-1735, p. 7 (La.12/1/98), 721 So.2d 875, 879;
 
 In re Quirk,
 
 97-1143, p. 4 (La.12/12/97), 705 So.2d 172, 176;
 
 In re Marullo,
 
 96-2222, p. 3 (La.4/8/97), 692 So.2d 1019, 1021;
 
 In re Decuir,
 
 95-0056, p. 7 (La.5/22/95), 654 So.2d 687, 692.
 

 The charges against a judge must be proved by clear and convincing evidence before this Court can impose discipline.
 
 In re Hughes,
 
 2003-3408 (La.4/22/04), 874 So.2d 746, 760. This standard requires that the level of proof supporting the charge or charges against a judge must be more than a mere preponderance of the evidence, but less than beyond a reasonable doubt.
 
 In re Jefferson,
 
 753 So.2d at 185;
 
 In re Bowers,
 
 98-1735 at p. 7, 721 So.2d at 880;
 
 In re Quirk,
 
 97-1143 at p. 4, 705 So.2d at 176;
 
 In re Huckaby,
 
 95-0041 at p. 6 (La.5/22/95), 656 So.2d 292 at 296.
 

 11,Formal Charge 0266: Improper Allocation of Fines
 

 Between 2003 and 2005, Judge Johnson, while presiding over Drug Court, ordered defendants in 124 criminal cases to pay fines to various public elementary and high schools, and not-for-profit or charitable organizations, ranging from $50 to $5,000 per case, totaling nearly $100,000 in all. Judge Johnson testified that the amount of a defendant’s fine was based upon several factors, including the defendant’s ability to pay, age, family obligations, the volume of drugs involved, the number of prior convictions, and the extent of the defendant’s cooperation with the District Attorney’s Office. The factors taken into consideration are communicated to the defendant during the plea process, “and from that group of factors I discharge the discretion I have” under La. C.Cr.P. art. 895(A)(7). When the court places a defendant on probation, pursuant to La.C.Cr.P. art. 895(A)(7), the court may impose “any specific conditions reasonably related to [the defendant’s] rehabilitation,” including “mak[ing] reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court.... ” It is Judge Johnson’s position that all of the “fines” he imposed, cited in Formal Charge 0266, were authorized by this subsection.
 

 The Commission found that in 2003, 2004, and 2005, Judge Johnson ordered defendants in certain cases that he adjudicated to pay sums of money to various organizations. Judge Johnson did not ascertain, prior to ordering money to be paid by defendants to an organization, whether or not the organization was “involved in drug abuse prevention and treatment for supervising a treatment program ordered by the court for a particular defendant.” Similarly, he did not ascertain whether the organizations were “qualified as a tax-exempt organization under Section 501(c) of the Internal Revenue Code of the United States” or whether they were “licensed by |inthe Department of Health and Hospitals in the supervision of drug abuse preven
 
 *432
 
 tion and treatment.” See La.C.Cr.P. art. 895.1(B)(7).
 

 Judge Johnson testified that he ordered defendants to pay money to various organizations as a condition of probation purportedly because the requirement to pay the money was “reasonably related to [the defendant’s] rehabilitation” and that the defendant was making “reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense,” all as permitted by La. C.Cr.P. art. 895. Judge Johnson explained:
 

 These offenses were being committed in East Baton Rouge Parish. They were affecting the community’s life-style ... My plan was to make these defendants repair the community of East Baton Rouge Parish. I mean, I don’t know if, as a judge, you live in a community and you see the destruction by offenders engaging in this trafficking or drug culture. It’s their responsibility to repair the harms that they’re doing. And if you don’t make them do it and you make other citizens through taxes or other services do it, then that is not personal accountability in my view. I need to make these defendants personally accountable and repair what they’re destroying, which is our parish, our communities, our cities, our schools, our neighborhoods, our organizations. The civic institutions, the religious institutions, the educational institutions are all in decline all because of the drug activities that are being perpetrated in our parish. And my approach under what you say is expansive is to make the ones who are destroying the community repair it. If you asked me did this particular person destroy this particular school specifically, I don’t know. I know collectively they were. And if we don’t address it, then the role of the judge and the role of the Drug Court is not effective, it is not solving the problem. So that’s how I view reparation.
 

 Most of the defendants were originally charged with one or more of the following: (1) possession of a controlled substance, primarily marijuana and cocaine, (2) possession with the intent to distribute a controlled substance, (3) distribution of a controlled substance, (4) cultivation of marijuana, (5) possession of drug paraphernalia, or (6) being in possession of a firearm while in possession of a [ ncontrolled substance. In only two cases listed in Formal Charge 0266 was there a “victim” or “aggrieved party.” In neither case did Judge Johnson order the defendant to make restitution to such person, but he did order the defendant in each case to pay money to certain private organizations as a condition of probation.
 
 [7]
 

 Had Judge Johnson ordered defendants to pay money to the Criminal Court Judicial Expense Fund in accordance with the
 
 *433
 
 provisions of La.C.Cr.P. art. 895.1(B)(2) and (3), the East Baton Rouge Parish Sheriffs Office and District Attorney’s office, would have benefitted. Judge Johnson attempted to show that the complaints against him in Formal Charge 0266 were filed as retaliation because the complainants considered Judge Johnson’s acts as a diversion of funds owed to them. Judge Johnson defended his actions in assessing fines to be paid by Drug Court defendants to private organizations, in part based on his argument that he believed Drug Courts to be special problem-solving courts. He introduced into evidence literature concerning the use of Drug Courts and various considerations and philosophies in connection therewith.
 

 Judge Johnson defended Formal Charge 0266, in part, by pointing out to the Commission that he simply engaged in the same practices as those of his colleagues on the 19th JDC, who preceded him as drug court judges. Judge Johnson further argued that the ABA Model Code provides that Drug Court standards and practices should supersede the directives of the Canons of the Code of Judicial Conduct.
 

 11
 
 ¿The Commission’s Conclusions of Fact and Law
 

 The Commission concluded that as to Charge 0266:
 

 A)Judge Johnson engaged in (i) -willful misconduct relating to his official duty and (ii) persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute,
 
 [8]
 
 which in each case violated La. Const, art. V, § 25(C).
 

 B) The Commission found, by clear and convincing evidence, Judge Johnson did not comply with the limitations set forth in La.C.Cr.P. art. 895.1(B)(7) when he assessed payments of monies to various private organizations involved in drug abuse prevention and treatment, because he did not ascertain whether the agency was tax exempt under Section 501(c) of the Internal Revenue Code, or licensed in the supervision of drug abuse prevention and treatment by the Department of Health and Hospitals.
 
 [9]
 

 The Commission specifically rejected the argument that a judge’s ordering a defendant to pay money to a charitable, or civic organizations constitutes “reparation” or “restitution” for a crime, for purposes of La.C.Cr.P. art. 895(A)(7), unless that organization was itself the crime victim. The Commission noted that none of the material offered by Judge Johnson that addressed the “restorative justice” concept of Drug Courts suggest utilizing a monetary fine to accomplish this purpose. The closest parallel was ordering community service, a sentencing option specifically permitted under La.C.Cr.P. art. 895(A)(11).
 

 C) The OSC proved by clear and convincing evidence that when Judge Johnson 11sordered defendants to pay money to organizations cited in Formal Charge 0266, he did not comply with the provisions of La.C.Cr.P. art. 895(A) that lists twelve
 
 *434
 
 conditions that may be imposed as a condition of probation.
 

 After considering the Hearing Officer’s report, the Commissioners rejected respondent’s argument and took note that, traditionally, Louisiana courts have taken a very restrictive view of what a judge can order a probationer to pay.
 
 [10]
 
 Citing
 
 In re: Quirk,
 
 97-1143 (La.12/12/97), 705 So.2d 172,
 
 [11]
 
 the Commission found that the language of Article 895(A)(7) is clear and unambiguous. The term “aggrieved party” means the actual victim of the crime of which the defendant was convicted.
 
 See, State v. Labure,
 
 427 So.2d 855 (La.1983).
 

 D) Judge Johnson’s counsel argued that District Attorney Moreau filed the complaint to the Commission because money was diverted from his office. The Commission concluded that the motive of a complainant is irrelevant to the disposition of a case of judicial discipline.
 
 See In re: Elloie,
 
 05-1499 (La.1/19/06), 921 So.2d 882 (holding that “the motive of the complainant who reports judicial misconduct is irrelevant. The critical inquiry is whether sanctionable ethical misconduct actually occurred.”).
 

 Although there was testimony that it was the custom in the Drug Court for | uother judges to order payments to be made to various charitable, civic, and nonprofit organizations, the Commission concluded “custom” is not a mitigating factor or a defense in judicial disciplinary cases.
 
 See, In re: Elloie, supra
 
 (holding that custom is not a mitigating factor or a defense when the procedure at issue is in direct contravention of express written statutory law, about which there can be no misunderstanding or confusion). It is well established that violation of ethics rules by other judges is not a defense to charges of Codal violations.
 
 See, In re: Aucoin,
 
 99-3084 (La.8/31/00), 767 So.2d 30 (holding that “blind adherence to long-standing use of improper procedures” did not justify the judge’s erroneous practices).
 

 Formal Charge 0284: Dual Office Holding
 

 Sara Holliday began working at the 19th Judicial District Court (the “Court”)
 
 *435
 
 as Judge Johnson’s judicial assistant in May 1999, and was still employed at the court when Judge Johnson approved of Ms. Holliday’s holding another job with a federal governmental agency. Ms. Holli-day was employed full-time by the United States Small Business Administration (the “SBA”) during the time period from October 17, 2005 to February 15, 2006. Ms. Holliday gave the Court two weeks’ notice that she was terminating her employment with the court effective October 14, 2005. The resignation letter was dated October 3, 2005.
 

 Ms. Holliday was rehired by the court as Judge Johnson’s judicial assistant approximately one week after the October 14, 2005 effective date of her resignation. Ms. Holliday testified that she decided not to resign from her position at the Court because she was not required to work eighty hours per week at the SBA, as she had initially been told. In response to questioning before the Hearing Officer, Ms. Holliday testified that she actually worked at the SBA “forty hours a week, and my office hours was [sic] 10:30 to 7:00.”
 

 |! ¡After Judge Kelley learned that Ms. Holliday was working both for the court and the SBA, the court’s personnel committee met and determined that Ms. Holli-day could not hold both jobs. Judge Kelley explained in a letter to Judge Johnson dated February 15, 2006, that in his absence from the meeting, the committee had relied on “documentation ... which disclosed that Ms. Holliday has been employed by the U.S. Small Business Administration, on a full-time work schedule since October 17, 2005, while simultaneously maintaining full-time employment with the Court, though assigned to your Division.” The letter also said that “the Committee suggests that you take any and all action necessary to effect her separation from the Court.” That same day Ms. Hol-liday sent a letter to Judge Johnson reading in relevant part as follows:
 

 It has come to my attention that an issue has arisen with respect to my employment with the Court. I do not intend for any issue to stand in the way of my commitment to the public and in the interest of maintaining the utmost in public confidence and integrity. Therefore, I resign my position with the 19th Judicial District Court, effective immediately.
 

 When Ms. Holliday was employed as Judge Johnson’s judicial assistant, she was under his sole supervision. While working as Judge Johnson’s judicial assistant, the Court did not have an established minimum or maximum number of hours that a judge’s judicial assistant was required to work, and each judge determined what hours his or her judicial assistant worked.
 
 [12]
 

 Ms. Holliday did not complete time sheets. Instead, Judge Johnson certified that Ms. Holliday “worked a sufficient number of hours” during each of the
 
 *436
 
 months lnjOf October 2005, November 2005, December 2005, and January 2006 “to perform her assigned job duties and responsibilities.”
 

 Commission’s Conclusions of Fact and Law
 

 A)La. R.S. 42:63(A)(1) provides, in relevant part, that “no person holding ... employment in any of the branches of state government ... shall at the same time hold ... employment ... in the government of the United States.... ” The Commission concluded that Ms. Holliday violated La. R.S. 42:63(A)(1) because admittedly, she held employment in the government of the United States at the SBA at the same time that she held full-time employment in the judicial branch of the Louisiana state government as Judge Johnson’s judicial assistant.
 

 Based upon the clear and convincing evidence of Ms. Holliday’s dual office holding, the Commission concluded that Judge Johnson violated Canon 1 of the Code of Judicial Conduct.
 
 [13]
 
 By failing to determine that it was legally appropriate for Ms. Holliday to take a second job with the federal government, Judge Johnson caused the integrity of the judiciary to be questioned.
 
 [14]
 

 B) The Commission found clear and convincing evidence that Judge Johnson violated Canon 2 of the Code of Judicial Conduct, which requires a judge to avoid impropriety and the appearance of impropriety in all activities, and Canon 2A, in particular, which provides in relevant part that “[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes confidence in the integrity and impartiality of the judiciary.” Judge Johnson’s failure to know the law 117regarding dual employment, and allowing an employee to violate that law were improprieties that jeopardized the public’s confidence in the judiciary.
 

 C) The Commission concluded that the testimony and other evidence submitted failed to establish by clear and convincing evidence that Judge Johnson’s authorization of a continuation of Ms. Holliday’s pay from the court after she began working for the SBA amounted to a violation of the public payroll fraud statute.
 

 RECOMMENDATION OF THE COMMISSION
 

 In recommending discipline, the Commission looked to the factors set forth by this court in
 
 In re: Chaisson,
 
 549 So.2d 259 (La.1989),
 
 [15]
 
 and concluded as follows:
 

 
 *437
 
 (a) and (b) As to Formal Charge 0266, Judge Johnson established a pattern of ordering defendants who appeared in drug court, as a condition of their probation, to pay monies to private organizations, primarily civic and/or charitable groups, when these groups did not meet the legal requirements to be recipients of these assessments;
 

 (c) and (d) Judge Johnson’s misconduct occurred with respect to his official judicial duties as to both Charge 0266 and Charge 0284;
 

 (e)Judge Johnson denied that he knew he would violate any canons of the Code of Judicial Conduct as the result of the conduct proven as to Charge 0266. However, failure to comprehend that actions by a judge are violative of the Code of Judicial Conduct is not a defense. As to the monies, whether or not they were “fines” in the legal sense, he ordered paid to unqualified private groups, that he followed the practice of other judges does not excuse the misconduct. The Commission noted with interest that after the problem was brought to his attention, Judge Johnson wrote a letter to the Office of Special Counsel saying he did not intend to change his practice pending completion of the Commission’s case. The Commission would have been more inclined to find some | lsmitigation if Judge Johnson had agreed to stop his criticized practice while the matter was under review or to seek a legal opinion from the Attorney General’s Office.
 

 As to his purported failure to understand that he was condoning and permitting Ms. Holliday to engage in legally impermissible dual office holding, the Commission rejected Judge Johnson’s excuse that he told Ms. Holliday to check with the court administrators and then relied on her report to him. Judge Johnson should have made an inquiry independent of Ms. Holliday on this matter;
 

 (f) As to whether Judge Johnson has indicated he will change his conduct, he testified that the type of drug court he presided over is no longer operational, although apparently, a “therapeutic drug court” is presided over by another judge on the 19th JDC. Further, Ms. Holliday is no longer in Judge Johnson’s employ, so there is no necessity for changing his conduct with regard to her employment. Notably, however, once he understood what was prohibited by the dual office holding law, Judge Johnson acted quickly to encourage Ms. Holliday to resign;
 

 (g) Judge Johnson assumed judicial office in 1993, and became a judge on the 19th Judicial District Court in 1999. Thus, he was not a new judge at the time of his ethical misconduct;
 

 (h) No proper evidence of any prior complaints was presented to, or considered by, the Commission in these proceedings;
 

 (i) Judge Johnson’s misconduct, as proven with regard to Charge 0266, placed the judiciary as a whole in a negative light because it led private groups to believe they could properly solicit funds for worthy causes from Judge Johnson — in other words, they
 
 *438
 
 were left with the perception that he could use his judicial office for their private benefit, which flies in the face of well accepted ethical precepts. Many Commissioners felt that Judge Johnson’s practices were morally well-intended, even if misguided legally.
 

 (j) No evidence was introduced that Judge Johnson gained any monetary advantage as the result of his proven misconduct, and he testified affirmatively that he received no money. Regardless of his motive, he undoubtedly received accolades from the community, as evidenced by the thank you letters introduced into evidence. There was the potential for other advantages inuring to his benefit as the result of his orders to drug court probationers, and so it is not possible to deny that Judge Johnson received any personal benefit as the result of his assessments of funds to private groups.
 

 | laThe Commission recognized that as a constitutional fact-finding body, it is not a court, and is not called upon or empowered by law to render legal judgments other than to draw conclusions, in some instances, whether a judge’s violation of law rose to the level of ethical misconduct. With such caveats in mind, the Commission found the record demonstrates that Judge Johnson’s actions, as proven by clear and convincing evidence, were in violation of the Code of Judicial Conduct and the Louisiana Constitution of 1974.
 

 Regarding the issue of an appropriate sanction, the Commission stated:
 

 The Office of Special Counsel recommended to the Commission that Judge Donald Johnson should be suspended without pay for 90 days. The Commission found Judge Johnson’s admitted conduct extremely troubling, but the members found mitigation in his favor, including that his motives were convincingly good — paramount to him was improving his community, and no direct connection was proven between Judge Johnson and any organization that ben-efitted from his judicial orders. Further, as to Formal Charge 0284, the Commission took note that Judge Johnson’s failure to assure that it was permissible to allow Ms. Holliday to work atypical flexible hours and also to work simultaneously for the federal government occurred during the stressful time immediately following Hurricanes Katrina and Rita making landfall in Louisiana. It was commonly recognized that at that time citizens and government in Baton Rouge endured unusual stress. As a result, the Commission deemed the lesser recommendation of public censure more appropriate.
 

 We agree with the Commission’s recommendation of public censure. While the actions of Judge Johnson in permitting Ms. Holliday to work for the SBA during the same time she worked as his assistant were imprudent, his actions were not with dishonorable intent, nor for any type of personal gain. It was instead, a lapse of judgment during a very stressful time in this State’s history. Moreover, upon being notified of the violation by Judge Kelly, Judge Johnson immediately took action to |20remedy the situation and had Ms. Holli-day tender her resignation.
 

 DECREE
 

 For the reasons stated herein, it is ordered that Judge Donald R. Johnson of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, be publicly censured. It is further ordered that Judge Johnson be ordered to reimburse and pay to the Commission the amount of $5,801.89 in hard costs incurred in the investigation and prosecution of his
 
 *439
 
 case pursuant to Supreme Court Rule XXIII, Section 22.
 

 VICTORY, J., dissents and would impose a more serious sanction.
 

 [1]
 

 . Calogero, C.J., retired, participated in this decision which was argued prior to his relirement.
 

 [2]
 

 . La. R.S. 42:63(A)(1) provides, in relevant part, that "no person holding employment in any of the branches of slate government ... shall at the same time hold ... employment in the government of the United States....”
 

 [3]
 

 . La. C. Cr. P. art. 895(A)(7) states in pertinent part:
 

 A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
 

 (7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court ...
 

 [4]
 

 . La. R.S. 46:1802(10) provides:
 

 (10) "Victim" means:
 

 (a)Any person who suffers personal injury, death, or catastrophic property loss as a result of a crime committed in this state and covered by this Chapter.
 

 (b) A Louisiana resident who is a victim of an act of terrorism, as defined in 18 U.S.C. 2331, occurring outside the United States.
 

 (c) A Louisiana resident who suffers personal injury or death as a result of a crime described in R.S. 46:1805, except that the criminal act occurred outside of this state ...
 

 [5]
 

 .La.C.Cr.P art. 895.1(B)(7) permits money to be paid as follows:
 

 B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:
 

 (7) To a local public or private nonprofit agency involved in drug abuse prevention and treatment for supervising a treatment program ordered by the court for a particular defendant, provided that such agency is qualified as a tax-exempt organization un
 
 *430
 
 der Section 501(c0 of the Internal Revenue Code of the United States. Any nonprofit agency receiving money under the provisions of this Paragraph must be licensed by the Department of Health and Hospitals in the supervision of Drug abuse prevention and treatment.
 

 [6]
 

 . La: 14:138(A) provides that:
 

 A. Public payroll fraud is committed when:
 

 (1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or payroll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation himself, or for services grossly inadequate for the payment to compensation received or to be received according to such employment list or payroll; or
 

 (2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employment list or payroll of his office, the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation.
 

 [7]
 

 . The cases of
 
 State v. Wilson,
 
 19th JDC, No. 19-04-0191 and
 
 State v. Mellon,
 
 19th JDC, No. 08-04-0349 listed in Formal charge 0266 involved a victim or aggrieved party. In
 
 Wilson,
 
 the defendant was charged with and pled guilty to the unauthorized use of a vehicle belonging to Rent a Wreck. The defendant in
 
 Wilson
 
 was ordered, as a condition of probation, to pay a ''$500.00 fine to Southern University Baseball Team.” There was no provision in the sentencing order for making restitution or reparation to the aggrieved party, who was clearly the owner of the vehicle that was used without authorization, not the Southern University baseball team.
 

 In
 
 Melton,
 
 the defendant was charged with and pled guilty to theft by the unauthorized use of a credit card. The defendant in
 
 Melton
 
 was ordered, as a condition of probation, to pay a ''$200 fine to Souther [sic] University.” As in
 
 Wilson,
 
 there was no provision in the sentencing order in
 
 Melton
 
 for making restitution or reparation to the aggrieved party, whose credit card was used without authorization. There was no indication that the credit card belonged to Southern University.
 

 [8]
 

 . The Commission rejected Judge Johnson's contention that the Canons of the current Code should be inapplicable because the ABA Model Code suggests in some manner that specialty courts, including drug courts, present special circumstances so that at least some of the canons should not apply to a judge's conduct. The Commission reasoned that not only has the new ABA Model Code not been adopted in this state, but more importantly, no part of the ABA Model Code advocates allowing a judge to ignore and disregard positive statutory law.
 

 [9]
 

 . Internal Revenue Code 26 U.S.C. 501(c), is a listing of 28 types of non-profit organizations exempt from some federal taxes.
 

 [10]
 

 . For example, in
 
 State v. Morrison,
 
 459 So.2d 1320 (La.App. 1st Cir. 1984), the court held that it was improper for a judge to order payment to the “State Victim's Compensation Fund” as a condition of probation. The Commission concluded that had the judge in
 
 Morrison
 
 been permitted to order payment to this victim's fund, it would have been closer to a reparation than the payments Judge Johnson ordered paid to civic clubs and high schools.
 

 The case of
 
 State v. Cutrera,
 
 558 So.2d 611 (La.App. 1st Cir. 1990), involved an interpretation of La.Code Crim. P. art. 895.1(B)(4), which allows a court to impose as a condition of probation payment to a law enforcement agency for the reasonable costs incurred in arresting the defendant on felony charges involving the "distribution of or intent to distribute” a controlled dangerous substance. In
 
 Cutrera
 
 the court of appeal deemed such a payment to a law enforcement agency by a defendant who had been charged with both possession and distribution of a controlled dangerous substance but convicted only of drug possession to be error. The Commission commented that “if the jurisprudence is this restrictive, no one could reasonably interpret Article 895 to allow a judge the latitude to impose 'fines' or other monetary assessments to third party charitable recipients."
 

 Similarly, the court in
 
 State v. Hall, 99-
 
 2887 (La.App. 4th Cir. 10/04/00), 775 So.2d 52, found error in a judge’s order that, as a condition of probation, monies were to be paid to the court’s judicial expense fund, where that fund was not enumerated as a qualified recipient under the express provisions of La.Code Crim. P. art. 895.
 

 [11]
 

 . In
 
 Quirk,
 
 this Court held that a judge may be disciplined for misconduct involving "a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error."
 

 [12]
 

 . Jo Brace, the Court’s judicial administrator, testified that "[t]he 19th Judicial District Court’s Policy and Procedure Manual sets the office hours of the court as 8:30 to 4:30; however that same policy says that those are obviously flexible if the need arises for jury trials, overtime.” She further told the Hearing Officer that it "is within the judge’s purview to have additional office hours." It was Ms. Brace’s understanding that the building where the Court is located is "accessible from 6:00 a.m. to 6:00 p.m.,” after which time "a key is required to get into the building.”
 

 When questioned by Judge Johnson’s counsel regarding the Court's hours, Ms. Bruce agreed that the general office hours of the Court are not mandatory in any particular division and are only a guideline. She also agreed that there is "no policy, procedure, or regulation” that required Ms. Holliday to work any particular number of hours in any given week.
 

 [13]
 

 . The Commission specifically rejected Judge Johnson’s argument that this issue is premature because the Attorney General's suit against Ms. Holliday is ongoing. The Commission reasoned that it is authorized under the Louisiana Constitution and Supreme Court Rule XXIII to review the conduct of a judge in light of the Code of Judicial Conduct. In that endeavor, the Commission, is called upon to draw a conclusion whether or not a judge has disregarded the law or failed to maintain professional competence in the law
 

 [14]
 

 . When questioned by the assistant special council at the hearing and asked whether he was “aware ... of the Louisiana's Dual Office Holding law [sic],” Judge Johnson responded that he was not, but that he resolved the issue within two days. In
 
 In re: Alfonso,
 
 07-0120 (La.5/22/07), 957 So.2d 121, this Court stated that "[a]n act need not be intentional to support judicial discipline,” and that "[a] lack of conscious intent can still support the imposition of judicial discipline.”
 

 [15]
 

 .In
 
 Chaisson,
 
 this court, citing
 
 Matter of Denting,
 
 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:
 

 (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out
 
 *437
 
 of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.