898 So.2d 584 (2005)
Melvin A. CAVALIER, Jr., Anna Perkins, Adam and Gwen Thomas, Barbara Reynolds, et al.
v.
MOBIL OIL CORPORATION and Chalmette Refining, L.L.C.
No. 2004-CA-1543.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
*585 Allain F. Hardin, Fransen & Hardin, A.P.L.C., New Orleans, LA, for Plaintiff/Appellant.
Mickey P. Landry, Special Master, Landry & Swarr, L.L.C., New Orleans, LA, for Defendant/Appellee.
Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, Sr., and Judge TERRI F. LOVE.
DENNIS R. BAGNERIS, Sr., Judge.
Plaintiffs, Malvin A. Cavalier, Jr., et al., Patrick Pelayo, et al., and Charlotte Whitley, et al., appeal a judgment wherein the trial court denied their Motion to Reconsider Cy Pres Award. For the following reasons, we reverse the judgment of the trial court.

FACTS:
This matter comes to this court on the trial court's denial of a Motion to Reconsider Cy Pres Award. Because this case stems from a class action settlement, the record contains no testimony. Accordingly, the facts recited herein have been gleaned from the pleadings, briefs, memoranda and documents filed therewith, none of which has been subjected to the test of cross examination. Nevertheless, the facts essential to the disposition of this case do not appear to be in dispute.[1]
The Chalmette Refinery, owned and operated by Exxon Mobil, has a history of aerial emissions, mainly of hydrogen sulfide and sulphur dioxide that impact the surrounding neighborhoods. On February 2, and March, 9 and 10, 1998, two major releases occurred impacting Algiers. Five separate lawsuits were filed in Orleans Parish and one in St. Bernard Parish. All cases were consolidated into the lead case, Melvin A. Cavalier, Jr., et al. v. Mobil Oil Corporation, et al., Civil District Court, No. 98-1817.
A class certification hearing was held from March 19 through 24, 2001. The court, prior to issuing a judgment, ordered all parties to mediation. At the mediation, a resolution was achieved covering not only the events that occurred in February and March 1998, but also for three similar events: a January 19, 1996 chemical release that impacted Algiers, covered by a suit which was filed in St. Bernard Parish;[2] a December 27, 1996 release that impacted the upper end of St. Bernard Parish, and filed in the 34th J.D.C.;[3] and a November 17, 1999 event that impacted the lower end of Algiers and filed in the *586 Civil District Court for the Parish of Orleans.[4]
In order to facilitate the resolution of these class actions, all Civil District Court cases were consolidated, and the one St. Bernard case, filed as a result of the March 9-10, 1998 event, was transferred. A total of $8,602,500.00 was paid in settlement and was before the trial court for disbursement.
Various geographic boundaries were established for the events. The areas overlapped and the largest area basically encompassed the entire lower end of Algiers. There was no other part of the City of New Orleans or St. Bernard that was included in the court approved boundaries. The public was advised of the boundaries through publication in the local newspaper. A consolidated fairness hearing was held on November 15, 2001. The trial court approved the class action settlement for the events that occurred on February 2, 1998, March 9-10, 1998, and November 17, 1999, and a Special Master was appointed for all the Civil District Court cases.[5]
After set asides were made for administrative and other costs, past and future, over 5,500 individuals came forward and submitted claim forms to be included in the class action settlements of the three Civil District Court cases. In June 2002, after the payments were made, it was determined that of the set aside for administrative costs and reserves, there was a remaining balance left of approximately $138,750.00.
On June 19, 2002, Plaintiffs filed a Motion for Partial Allocation of Unencumbered Reserves for Community Service Project. The Plaintiffs' Motion recognized that to allocate the funds to members of the class "would be expensive, cumbersome and of diminimus value to the claimants given their numbers." The Plaintiffs' Motion further recognized that "[t]he persons impacted by the underlying events would be better served by allocating residual funds to community service projects." In view of this, the trial court directed the allocation of $10,800.00 to serve as matching funds for a bus, estimated to cost $54,000.00, for the Lower Algiers Senior Citizens Center.[6]
On July 15, 2002, Plaintiffs filed a Second Motion to Allocate Unencumbered Reserves For Community Service Projects in the area impacted by the chemical release. The trial court granted the motion and directed that $105,000.00 be paid to the New Orleans Foundation to establish a trust for the "Cut Off Community Children's Reading Program, Rosenwald Elementary School" and $22,950.00 to be paid to "Friends of NORD, Inc., Cut Off area playground improvements."[7]
On April 25, 2003, the trial court held a status conference to address various issues in the consolidated class actions. At that time, the trial court ordered that "a Notice be published in the local newspaper advising *587 all individuals, who have not thus far executed a release, that their allocation may be lost if they do not make contact with the [court's] disbursing agent within sixty (60) days of the publication of the Notice." On May 16, 2003, the proposed notice that was to list all claimants who had not come forward was submitted to the trial court for its approval via a letter from Plaintiffs' counsel. The notice was published, as ordered by the trial court, in the Times Picayune and stated, in pertinent part:

IN ORDER TO RECEIVE SETTLEMENT FUNDS, CLAIMANTS OR LEGAL REPRESENTATIVES OF CLAIMANTS MUST IMMEDIATELY CONTACT THE COURT APPOINTED DISBURSING AGENT EITHER IN WRITING... OR BY TELEPHONE....IF THE ABOVE NAMED INDIVIDUALS DO NOT PROPERLY CLAIM ANY SUMS DUE THEM BY AUGUST 1, 2003, THE SETTLEMENT FUNDS SET ASIDE FOR THEM MAY BE WITHDRAWN AND DIRECTED TO A COMMUNITY BENEFIT FUND FOR THE BENEFIT OF CITIZENS OF THE AREA INVOLVED IN THIS CLASS ACTION SETTLEMENT.
On October 8, 2003, the Plaintiffs filed a Third Motion To Allocate Unencumbered Reserves For Community Service Projects.[8] According to the signed order, the trial court directed $5,000.00 be paid to the New Orleans Public School Foundation to benefit "the citizens of those residing in the settlement class boundaries or for the use or benefit of public school facilities located within those boundaries...."
On March 25, 2004, a Motion and Order to Declare Individual Allocations Abandoned and to Transfer all Unallocated and Unused Reserves to Community Service Projects was filed by the Special Master of the three Civil District Court cases.[9] On that same date, the trial court ordered that the unallocated or remaining reserves be allocated as follows:

 (1) Friends of NORD Foundation for River
 Park, located at Tullis and Pitre Place 65%
 (2) Light House Project via the Volunteers of
 America 20%
 (3) New Orleans Public School Scholarship
 Foundation 10%
 (4) New Orleans Council on Aging, for the
 sole use and benefit of the Lower Algiers
 Senior Citizens Center 05%
 Total ........................................ 100%

On March 31, 2004, Plaintiffs filed a Motion to Reconsider Cy Pres Award. The original trial who ordered the reserves to be allocated to Friends of NORD Foundation for River Park, Light House Project, the New Orleans Public School Scholarship Foundation, and the New Orleans Council on Aging, was elected to a higher office and was no longer serving the district court bench. Consequently, the Motion to Reconsider Cy Pres Award was considered by a pro tempore judge, who denied the Motion on May 7, 2004. On June 22, Plaintiffs filed an "Assignment of Error for Consideration on Appeal" setting forth the objection to the specific allocation made to the "Lighthouse Project via The Volunteers of America." Specifically, the Assignment of Error for Consideration on Appeal states as follows:
The specific Cy Pres allocation made to the "Lighthouse Project via The Volunteers of America," by Order entered on March 25, 2004, was made in error and did not benefit persons who made the class as determined in these proceedings. Said allocation was therefore in *588 conflict with the general scope of "Cy Pres" awards and in conflict with the court ordered Notice to class members stating that any allocation that was withdrawn would be "directed to a community benefit fund for the benefit of citizens of the area involved in [the] class action settlement."

DISCUSSION
On appeal, Plaintiffs contend that the trial court erred in allocating a percentage of the withdrawn class action funds to a project that had no connection whatsoever to the class action or the beneficiaries of the class actions. Further, Plaintiffs argue that the trial court erred when it did not adhere to the legal notice published in the newspaper advising class action claimants that their allocation, if withdrawn, was to be "directed to a community benefit fund for the benefit of citizens in the area involved in this class action settlement." Conversely, the Special Master contends that the trial court has vast discretion in allocating Cy Pres funds to community based charities anywhere. The Special Master argues that the trial court is not required to allocate Cy Pres funds for projects only within artificially drawn geographical boundaries.
The Cy Pres doctrine has been used to disburse proceeds of a class action lawsuit when the amounts owing to each individual plaintiff are exceedingly small and/or identification of the amount due each individual would be excessively difficult. See Susan Beth Farmer, More Lessons Learned from the Laboratories: Cy Pres Distributions in Parents Patriae Antitrust Actions Brought by State Attorneys General, 68 FORD. L. REV. 361, 393 (1999). While this Court has not located a Louisiana case addressing the efficacy of Cy Pres distribution of a class action settlement, these types of settlements have been found to be fair by other courts around the country.[10]
The equitable doctrine of Cy Pres permits distribution of excess class action damage or settlement funds to the "next best" class, in order to parallel the intended use of the funds as nearly as possible. See Democratic Cent. Comm. v. Washington Metropolitan Area Transit Comm'n, 84 F.3d 451, 455 (D.C.Cir.1996). This distribution does not subject defendants to greater liability or alter their substantive right, because it affects interests of silent class members only. Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307, (9th Cir.(Ariz.) May 18, 1990). Further, distributing proceeds through Cy Pres satisfies class action goals by deterring similar conduct and disgorging the defendant of profits wrongfully obtained, and using those funds in a way that at least indirectly benefits the class members. Susan Beth Farmer, More Lessons Learned from the Laboratories: Cy Pres Distributions in Parents Patriae Antitrust Actions Brought by *589 State Attorneys General, 68 FORD. L. REV. 361 at 394.
In this particular case, residual funds were available from class actions that were filed because of the ill effects of chemical releases that impacted the lower end of Algiers in the City of New Orleans. Although all previous allocations of these funds were made to community service projects that directly benefited those persons impacted by the chemical releases, the March 26, 2004 order allocated 20% of the final disbursement (approximately $47,200.00) to the Light House Project, a project which provides services to residents and citizens of the lower ninth ward of the City of New Orleans, an area not involved in this class action settlement. This disbursement to the Light House occurred despite the notice published in the Times Picayune that the funds would be "withdrawn and directed to a community benefit fund for the benefit of citizens of the area involved in this class action settlement." Based on these facts, and because both St. Bernard and Orleans Parish cases were involved, we agree with Plaintiffs' argument that the trial court apparently believed that one of the companion cases to the Civil District Court cases involved New Orleans residents in the lower ninth ward, and merely erred in allocating funds to an organization outside the geographical boundaries of these class action settlements. As such, we reverse that part of the trial court judgment, which allocated 20% of the proceeds to the Lighthouse Project of the Volunteers of America. Further, we remand the case to the Civil District Court for the Parish of Orleans for a new determination of where the funds should be directed.
REVERSED AND REMANDED.
NOTES
[1] The Special Master finds the facts, as presented by Plaintiffs in their appellate brief, accurate, except for the distributions and reasons for distributions, which are not really in dispute in the instant appeal.
[2] Greer v. Mobile Oil Corporation, No. 80,975
[3] Chartier v. Mobil Oil Corporation, No. 83,658
[4] Whitley v. Mobil Oil Corporation, No. 99-18754
[5] The class action settlement fairness hearings were held in the 34th Judicial District Court for the events that occurred on January 19, 1996 and December 27, 1996. In these two cases, which were in the 34th J.D.C., separate Special Masters were appointed. The boundaries included parts of St. Bernard Parish and a part of Algiers.
[6] The Lower Senior Citizens Center was located directly in the area of impact.
[7] The "Cut Off" community is in the impact zone of the chemical releases involved in these consolidated cases and Rosenwald Elementary School is the primary public elementary school in the impact zone.
[8] The October 8, 2003 motion and order are not in the record. Plaintiffs merely attached the signed trial court order to their appellate brief.
[9] The parties agree that, at that time, approximately $236,000.00 of unclaimed awards and reserves remained.
[10] See, e.g., In re Motorsports Merch. Antitrust Lit., 160 F.Supp.2d 1392, 1394 (N.D.Ga.2001) (distributing unclaimed remainder funds to charitable purposes according to cy pres doctrine); Jones v. National Distillers, 56 F.Supp.2d 355, 358 (S.D.N.Y.1999) (authorizing that unclaimed funds in securities litigation case be paid to legal aid charity) New York v. Reebok Int'l Ltd., 903 F.Supp. 532, 536-37 (S.D.N.Y.1995) (holding settlement fair that distributed to charitable purposes eight million dollar recovery for overcharging of athletic shoes, where each individual claims ranged from $1-$4 and cost of administering individual recovery would be around $2.50 per claimant); Superior Beverage Co. v. Owens-Illinois, Inc., 827 F.Supp. 477, 478-79 (N.D.Ill.1993) (settlement in anti-trust case distributed unclaimed remainder funds according to Cy Pres doctrine to several different charities); Pray v. Lockheed Aircraft Corp., 644 F.Supp. 1289, 1303 (D.D.C.1986) (allowing punitive damage portion of settlement fund case be given to charitable cause in case involving recovery for claims stemming from 1975 airplane crash in Saigon).