GUIDRY, Justice.
 
 *
 

 |! This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (hereafter, “the Commission”) that Judge William A. Mor-vant, of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, be publicly censured and ordered to reimburse to the Judiciary Commission the costs incurred in the investigation and prosecution of this case. Following an investigatory hearing, the Commission made findings of facts and law, and determined that Judge Mor-vant violated Canon 2 B of the Code of Judicial Conduct and Article V, § 25(C) of the Louisiana Constitution of 1974. After a thorough review of the facts and law in this matter, we agree Judge Morvant engaged in violations of Canon 2 B and Article V, § 25(C). However, we conclude this wrongdoing does not rise to the level of misconduct warranting imposition of a disciplinary sanction.
 

 UNDERLYING FACTS
 

 On January 1, 1997, Judge Morvant assumed his elected office to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, and has served continuously on the court since that time. From the inception of his tenure through December 2002, he presided exclusively over the Nineteenth Judicial District’s Drug |2Court, a speciality-court created by
 
 en banc
 
 order of the district court to facilitate the rapid disposition of drug cases.
 

 As a result of his high-volume docket, Judge Morvant imposed almost daily sentences for misdemeanor and felony drug-related offenses. At issue in these proceedings are probationary sentences imposed between January 1997 and July 2001. Specifically, Judge Morvant ordered, as a condition to probation, that the defendants in 1,052 drug cases pay a fine to “I Care,” a program whose mission is to provide substance abuse prevention education for children in the East Baton
 
 *76
 
 Rouge Parish School System.
 
 [1]
 
 Fines were assessed in the amounts of $50 and $100 for misdemeanor and felony offenses, respectively, for a total aggregate amount of $83,550 being paid to “I Care.” Most relevant to the instant matter, during the period Judge Morvant was imposing monetary assessments as terms of probation, he was named a member to the “I Care” Advisory Council.
 

 PROCEDURAL HISTORY
 

 An objection was never raised by any person to Judge Morvant’s imposition of fines as conditions to probation. Rather, during the course of investigating an unrelated matter involving another member of the judiciary, the Commission learned of Judge Morvant’s assessment of fines bene-fitting the drag prevention organization to which he was a member of its advisory council.
 
 [2]
 
 The Commission, through the [nOffice of Special Counsel (hereafter, “OSC”), opened an investigatory file in this matter on its own motion, pursuant to Supreme Court Rule XXIII, § 8(a).
 

 In response to the OSC’s initial inquiry, Judge Morvant admitted to imposing the fines, stating he believed the assessments were permissible under the Louisiana Code of Criminal Procedure since the penalty was reasonably related to the defendant’s drag rehabilitation. See La.C.Cr.P. art. 895(A). He also acknowledged that, during the period in question, he served on the “I Care” Advisory Council with the intent of assisting the organization in achieving its goals of drug prevention education. Judge Morvant maintained the position was unpaid with the only personal benefit being the potential reduction of the number of criminal defendants in his court.
 
 [3]
 

 Formal Charge
 

 On March 26, 2008, the Commission issued Formal Charge 0924 against Judge Morvant. The charge, as subsequently amended and supplemented, alleged his actions in ordering defendants in 1,052
 
 *77
 
 drug cases to pay fines to “I Care” violated Canon 2 B (a judge shall not lend the prestige of judicial office to advance the private | .¡interest of the judge or others) of the Code Judicial Conduct
 
 [4]
 
 and Article V, § 25(C) (disrepute to judicial office caused by willful misconduct relative to official duty and persistent and public conduct prejudicial to the administration of justice) of the Louisiana Constitution of 1974.
 
 [5]
 
 ,
 
 [6]
 

 In accordance with Supreme Court Rule XXIII, § 29, a hearing officer was appointed to conduct proceedings. Following the issuance of the hearing officer’s proposed findings of fact and conclusions of law, the Commission held a hearing on December 5, 2008. Five months later, the Commission filed its recommendation in this Court adopting the factual findings made by the hearing officer subject to modifications.
 

 15Factual Findings and Conclusions of Lato
 

 The Commission determined Judge Morvant’s actions in ordering defendants to pay money to “I Care” as a condition of their probation, while he was a member of the program’s advisory council, constituted a violation of Canon 2 B of the Code of Judicial Conduct. The Commission reasoned that Judge Morvant’s orders to pay monies to “I Care” was a use of his prestige of judicial office to advance the private interests of the program and to potentially advance his own private interests. It maintained his reputation was presumably enhanced by his public promotion of the “I Care” program since those associated with the organization and the East Baton Rouge Parish School System could only have benefitted in the event he were reelected.
 

 
 *78
 
 In deference, the Commission commended Judge Morvant’s “tireless support” for the program. It acknowledged the “I Care” Advisory Council is composed of community leaders who provide advice to further the organization’s mission of drug prevention in the schools and community.
 
 [7]
 
 While, noting the council members have no fiduciary obligations, unlike a director, the Commission also emphasized the members are uncompensated for their services and have no authority to direct how “I Care” funds are utilized.
 

 Notwithstanding, the Commission concluded Judge Morvant’s visible association with the organization raised the possibility that the public would perceive his use of his judicial power as a measure to enrich a philanthropic organization that he had a direct relationship with. Therefore, in addition to finding Judge Morvant | ^breached Canon 2 B of the Code of Judicial Conduct, the Commission determined that Judge Morvant violated Article V, § 25(C) of the Louisiana Constitution of 1974 by bringing-disrepute to his judicial office by his persistent and public conduct prejudicial to the administration of justice.
 

 Recommendation of Discipline
 

 The Commission applied factors set forth by this Court in
 
 In re: Chaisson,
 
 549 So.2d 259 (La.1989)
 
 [8]
 
 to recommend discipline under the facts. In doing so, it noted that it was established by clear and convincing evidence that Judge Morvant engaged in a pattern of conduct of ordering defendants as a condition of probation to pay fines to a program with which he had a highly visible role as a member of its advisory council. It recognized in mitigation that Judge Morvant’s motives were good and his misuse of the prestige of his office was unintentional. The Commission observed that he apologized for his unknowing misconduct and curtailed his activities with “I Care” when the allegations of impropriety were first raised, as well as had a record of no prior judicial discipline.
 

 Notwithstanding, the Commission found Judge Morvant’s direct connection with “I Care,” as a member of its advisory council, to be “critically significant.” It opined he potentially placed the judiciary as a whole in a negative light because the 17general public could reasonably perceive he misused his judicial power to favor an organization. While the record was absent evidence Judge Morvant gained any monetary advantage as the result of his misconduct, the Commission asserted there was the potential for non-monetary
 
 *79
 
 benefits. Based on its reasoning, the Commission filed its recommendation in this Court proposing that Judge Morvant be publicly censured and that he be ordered to reimburse and pay to the Commission the amount of $2,353.54 in costs.
 

 LAW AND DISCUSSION
 

 Clear and, Convincing Evidence of Misconduct
 

 This Court is vested with exclusive original jurisdiction in judicial disciplinary proceedings. La. Const. Art. V, § 25(C). Accordingly, it has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission.
 
 In re: King,
 
 03-1412, p. 17 (La.10/21/03), 857 So.2d 432, 445.
 

 It is undisputed that the charges imposed against a member of the judiciary must be proven by clear and convincing evidence.
 
 In re: Hughes,
 
 03-3408, p. 12 (La.4/22/04), 874 So.2d 746, 760. The standard of proof supporting the charge or charges against a judge must be less than beyond a reasonable doubt, but more than a mere preponderance of the evidence.
 
 In re: Bowers,
 
 98-1735, p. 7 (La.12/1/98) 721 So.2d 875, 880. We now apply these principles to the record and pertinent law.
 

 Judge Morvant readily conceded he assessed in favor of “I Care” the probationary fines subject of the formal charge during the time he was a member of the program’s advisory council. By his own admission to the underlying misconduct, he provided the OSC with sufficient evidence to satisfy its evidentiary burden. Without question, the ease of association between the monetary assessments and his | ^council position leads to the perception that Judge Morvant misused the prominence of his judicial office to further his personal interests. When the public believes that a jurist is engaging in misconduct relative to his official duties or engaging in conduct prejudicial to the administration of justice, it discredits his judicial office and potentially undermines the integrity of the judiciary as a whole.
 

 Based on such, we conclude there is clear and convincing evidence to support violations of Canon 2 B of the Code of Judicial Conduct and Article V, § 25(C) of the Louisiana Constitution of 1974, as set forth in the formal charge.
 

 Sanctions
 

 Having found that Judge Morvant has violated Canon 2(B) of the Code of Judicial Conduct and Article V, § 25(C) of the Louisiana Constitution of 1974, we turn to the issue of sanctions. The OSC contends Judge Morvant’s actions mandate imposition of the Commission’s proposed sanction of a public censure. We disagree.
 

 Like the Commission, we are guided by our earlier decision of
 
 In re: Chaisson, supra,
 
 which articulates the list of illustrative factors to consider in imposing judicial discipline.
 
 [9]
 
 In applying these considerations, we have no objection to the Commission’s conclusion that Judge Morvant’s actions constituted a pattern of misconduct taking place in his judicial capacity. Yet, it is the evidence responsive to the many remaining
 
 Chaisson
 
 factors that we find pivotal to our decision to deviate from the Commission’s proposed sanction.
 

 In addition to fully cooperating with the OSC in these proceedings, Judge Morvant immediately stopped the monetary assessments when the appearance of impropriety was raised. Although he timely acknowledged and apologized for his misdeeds, the
 
 *80
 
 record supports his assertion that his violation of the judicial rules was 19undeniably unknowing and not the product of any dishonest motive.
 
 [10]
 
 In fact, the evidence as a whole reflects, if there is any public perception that he exploited his position to satisfy his personal desires, it was premised in his good faith belief that his judicial office could be used to assist in the rehabilitation of the drug offenders that came before him, as well as for the betterment of the community through drug prevention education. Upon taking the bench on the Nineteenth Judicial District’s Drug Court, Judge Morvant took the initiative to educate himself on those drug prevention programs that could benefit from his discretionary authority to fine drug offenders under the Louisiana Code of Criminal Procedure. Through this process, he became familiar with the “I Care” program, which ultimately led to his long-term commitment to its mission and the premise that the offenders’ monetary reparation could facilitate, in part, their rehabilitation.
 
 [11]
 
 We note that Judge Morvant’s belief that the imposition of a probationary fine would assist in rehabilitating drug offenders 110was shared by John Russell, a former assistant public defender in East Baton Rouge Parish at the time in question. He testified at the Commission hearing relative to Judge Morvant’s monetary assessments favoring “I Care”:
 

 [A]s perhaps the first few times it was seen, you know, what is [“I Care”] about? And once we learned it was a drug — anti-drug educational program sponsored by the school board, that was sufficient for me personally as the attorney for these indigent defendants that I was representing. That to me was sufficient to not complain, not object.... Once I — it was gratifying to know there was an anti-drug program. We’re in drug court. We at times — I wouldn’t call it a specialized mission, but it was certainly different than other courts. And everyone, defense, state, judiciary was behind the notion that maybe we can make a difference in the drug abuse, drug addiction, drug crime in our city if we can. Supporting a program like “I Care” to me was certainly laudable, good ...
 

 As to the advisory council, Norma Rutledge, the director of “I Care,” testified that the primary role of the members was to keep a “finger on the pulse of what the needs are in the community for prevention.” Based on our review of the record,
 
 *81
 
 Judge Morvant did not conceptualize his council position as an influential or leadership role. This was not unreasonable in light of the fact he was not compensated for his services and owed no fiduciary obligation to the program. When questioned about his volunteerism for the program, Judge Morvant emphasized his delegated duties of directing traffic and selling food and beverages at scheduled events, stuffing envelopes for mailers, preparing program packets, and organizing activities and speaking at local schools. Therefore, while we are cognizant of the appearance of impropriety raised by Judge Morvant’s judicial misconduct, his actions were unquestionably not the product of any improper motivation, and nor did they result in any actual harm.
 

 Finally, in addressing the issue of an appropriate sanction, both parties have referenced the somewhat factually-similar case of
 
 In re: Johnson,
 
 08-2397, p. 19 (Lajl/21/09),1 1 So.3d 425, 438, where this Court adopted the Commission’s proposed sanction of a public censure. Judge Johnson engaged in misconduct involving the ordering of criminal drug offenders to pay fines to various non-profit entities. Unlike the instant matter, these recipients were not organizations even remotely qualified to receive funding through probationary sentencing since they were not involved in any respect with the prevention and treatment of drug abuse. See La.C.Cr.P. art. 895.1(B)(7). Additionally, Judge Johnson was charged with misconduct for improperly permitting his employee to wrongfully engage in dual office holding. Based on these factors, we conclude it is inappropriate to strictly compare these two cases in proposing discipline in the instant matter.
 

 CONCLUSION
 

 The Code of Judicial Conduct was enacted by this Court pursuant to its constitutionally-granted supervisory authority over all lower courts. This constitutional grant of supervisory authority is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the Court. La. Const. Art. V, § 5(A);
 
 Unwired Telecom v. Parish of Calcasieu,
 
 03-0732, p. 8 (La.1/19/05), 903 So.2d 392, 400. In exercising this authority, we are mindful that the primary purpose of the Code of Judicial Conduct is to protect the public.
 
 In re: Harris,
 
 98-0570, pp. 6-7 (La.7/8/98), 713 So.2d 1138, 1141.
 

 Under the totality of the circumstances, we do not find imposition of a sanction to be warranted under the facts.
 
 See, e.g., In re: Marullo,
 
 96-2222 (La.4/8/97), 692 So.2d 1019. In making this decision, we rely on Judge Morvant’s unblemished record on the judicial bench. Moreover, any potential appearance of impropriety subject of these proceedings stems solely from his admirable personal and judicial efforts to improve his community through substance abuse prevention and education. | |2While we in no way condone his actions and strongly caution him to refrain from similar judicial misjudgment in the future, we do not find his actions rise to a level of sanctionable misconduct.
 
 Id.,
 
 at 6, 692 So.2d at 1023 (“[A]ll violations of the Canons of the Code of Judicial Conduct do not always rise to the level of sanctionable misconduct.”) (citing
 
 In re: Hart,
 
 577 A.2d 351 (Me.1990)).
 

 DECREE
 

 For the foregoing reasons, it, is ordered that the recommendation of the Judiciary Commission of Louisiana is hereby rejected. No official discipline is imposed on Judge William A. Morvant.
 

 *
 

 Retired Judge Fred Sexton, assigned as Justice
 
 ad hoc,
 
 sitting for Justice John L. Weimer, recused.
 

 Retired Judge Philip Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Justice Chet D. Traylor, now retired.
 

 [1]
 

 . The legal name of "I Care” is "the Alcohol and Drug Abuse Prevention Program of the East Baton Rouge Parish School Board.” The program, which is operated through the East Baton Rouge Parish School System, is funded by three sources of revenue: three-quarters from a dedicated property tax approved by the voters of East Baton Rouge Parish, one-quarter from federal funds authorized under the "Safe and Drug-Free Schools” legislation contained in 20 U.S.C. § 7101, and less than one-percent from donations and court fines.
 

 [2]
 

 . Information regarding the possible ethical misconduct by Judge Morvant was received in the course of the Commission's proceedings against Judge Donald Johnson, who likewise ordered criminal defendants to pay fines to various not-for-profit and charitable organizations. See
 
 In re: Johnson,
 
 08-2397 (La. 1/21/09), 1 So.3d 425.
 

 [3]
 

 . Judge Morvant testified, in part, to the following relative to his service on the "I Care” Advisory Council:
 

 The mission of I-Care ... is to provide primary and secondary prevention education in the areas of alcohol, tobacco, drug abuse and violence, as well [sic] teaching students to face the future in a healthy, safe and drug free manner. As a member of the Advisory Council, I am a volunteer who agrees to assist and support the I-Care staff in achieving the goals of the program. The Advisory Council members are not considered as staff or employees of the program, but rather purely as volunteers from the community. As an Advisory Council member, I had no stake in the organization, except for successful achievement of its goals, that being to educate our students and community on drug abuse prevention. The only possible personal benefit for me would have been a reduction in the number of young defendants who appeared on my • docket facing drug charges, assuming
 
 the
 
 program was successful in its mission.
 

 [4]
 

 . Canon 2 B of the Code of Judicial Conduct states, in relevant part:
 

 A judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge ...
 

 [5]
 

 . Article V, § 25(C) of the Louisiana Constitution of 1974 provides, in pertinent part:
 

 On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute,....
 

 [6]
 

 . Judge Morvant was cited with numerous other judicial violations. Specifically, for alleged misapplication of Louisiana Code of Criminal Procedure article 895.1(B)(7), Judge Morvant was charged with breaching Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2A (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), and 3A(1) (a judge shall be faithful to the law and maintain professional competence in it) of the Code of Judicial Conduct. The Commission found insufficient evidence to support the allegations. Additionally, the Commission found tire record was absent any evidence to support the charged violation of Canon 5B(2) (a judge shall not solicit funds for any educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of judicial office for that purpose) of the Code of Judicial Conduct, as well as no evidence of alleged non compliance with Louisiana Revised Statutes 13:1000.4 (payment to the court-appointed special advocate program) and 15:571.11(A)(1)(a) (payment of fines and forfeitures in the parish's designated criminal court account), and Louisiana Code of Criminal Procedure article 895.4 (payment to certified crime stoppers organizations).
 

 Based on our review, we find no error as to the Commission's disposition of these alleged violations. As such, no further reference will be made to these provisions.
 

 [7]
 

 . The director of "I Care” testified that the members of the advisory council include the head of a community center, a district attorney, educators, school principals, the director of the East Baton Rouge Parish Securities Department, a school board member, the director of the Baton Rouge Recreation Department, a Louisiana State Trooper, representatives from health organizations including two local hospitals, an employee of the Louisiana Highway Safety Commission, and a representative from Louisiana State University.
 

 [8]
 

 . In
 
 In re: Chaisson,
 
 549 So.2d at 266 (citing
 
 In Matter of Deming,
 
 108 Wash.2d 82, 736 P.2d 639, 659 (1987)), we articulated nonexclusive factors to consider in imposing judicial discipline:
 

 (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (0 whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
 

 [9]
 

 . See n. 8,
 
 supra.
 

 [10]
 

 . In his initial response to the OSC, Judge Morvant wrote:
 

 I realize that in the area of judicial conduct, public perception can often times be as important as reality. If in any way my actions in imposing the special conditions of probation have caused any adverse public perception to the judiciary, I humbly apologize for those actions. It was never my intent to tarnish the integrity of this court, nor the judiciary.
 

 [11]
 

 . In these proceedings, Judge Morvant testified as followed at the hearing before the Judiciary Commission relative to “I Care”:
 

 [A]s to how I got involved, why I chose I-Care, I looked at what they were doing in the community. I looked at the impact that they were having and the effect — the positive effect that they were hopefully having on the prevention effort. They're not a treatment program. We've never said that they were. Their goal is simply prevention With regards to the defendants, I thought by imposing this condition as a special condition of probation, first and foremost that they consider the negative impact of their behavior and saw the consequences of their actions. This would ... bear some monetary burden of part of the prevention education effort within the parish as part of their sentence; and in doing
 
 so,
 
 maybe make them part of the solution as opposed to part of the problem. And it gave them a stake in the community. The community effort was to curb drug abuse, to educate young people.