MICHAEL E. KIRBY, Judge.
 

 l,The Louisiana Bar Foundation (“LBF”) appeals from a trial court judgment denying the Special Master’s recommendation for distribution of a
 
 Cy
 
 Pres
 
 [1]
 
 
 *1162
 
 award to the LBF. The trial court, Honorable Robert J. Burns, Judge Ad Hoc, determined that in view of his position as a Fellow
 
 [2]
 
 with the LBF, his approval of a
 
 Cy Pres
 
 distribution to the LBF would be a violation of Canon 2B of the Code of Judicial Conduct, as interpreted by the Louisiana Supreme Court in
 
 In re: Morvant,
 
 2000-0747 (La.6/26/09), 15 So.3d 74. For these reasons that follow, we reverse the judgment of the trial court and award the LBF 10% of the unused funds available as a
 
 Cy Pres
 
 distribution for efforts solely within the boundaries of Orleans Parish, as recommended by the Special Master.
 

 |2After the original nine class action defendants had settled and the class members and attorneys had been paid, the only issue left for the trial court to consider was the
 
 Cy Pres
 
 distribution of the remaining settlement money. Thus, on March 10, 2010, the trial court directed the Special Master to implement a protocol for consideration of prospective
 
 Cy Pres
 
 awards, stipulating that the residual funds could only be used for the benefit of the community adversely affected by the train car leakage, the event resulting in the class action herein. The Special Master promulgated a notice for submission of applications for
 
 Cy Pres
 
 distribution. After considering eleven applications received from individuals and interest groups, including Succor, Inc. (“Succor”), the appel-lee herein, the Special Master submitted his report to the trial court, recommending that the residual funds be distributed as follows: 65% to New Orleans Recreation Department (“NORD”); 25% to Ozanam Inn; and 10% to LBF.
 

 Succor objected to the Special Master’s recommendation. Following a contradictory hearing on September 24, 2010, the trial court adopted the Special Master’s recommendation, in part, awarding 65% of the residual funds to NORD and 25% to Oza-nam Inn. The court held in abeyance a final decision on awarding 10% of the residual funds to the LBF, and ordered the LBF to file a post-trial memorandum addressing the propriety of any award to the LBF in light of the Supreme Court’s decision in
 
 In re: Morvant.
 

 After considering the post-trial memorandum, the trial court rendered a judgment on October 28, 2010, denying the Special Master’s recommendation to award a
 
 Cy Pres
 
 distribution to the LBF. The LBF filed a motion for new trial and/or reconsideration of the October 28, 2010 order, which the trial court denied. The LBF appealed.
 

 [sCanon 2B of the Code of Judicial Conduct states, in relevant part:
 

 A judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge ...
 

 In
 
 In re: Morvant, supra,
 
 the Supreme Court upheld a finding of the Louisiana Judiciary Commission (“the Commission”) that Judge William A. Morvant, of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, violated Canon 2B of the Code of Judicial Conduct and
 
 *1163
 
 Article V, § 25(C) of the Louisiana Constitution of 1974.
 
 [3]
 
 Judge Morvant’s misconduct consisted of imposing fines, payable to the East Baton Parish “I Care” program, as a condition to probation in 1,052 drug cases decided between January 1997 and July 2001. “I Care” was a program whose mission was to provide substance abuse prevention education for children in the East Baton Rouge School System. The fines were assessed in the amounts of $50.00 and $100.00 for misdemeanor and felony offenses.
 
 In re: Morvant, supra,
 
 at p. 2, 15 So.3d at 75-76. Significantly, during the period Judge Morvant was imposing monetary assessments as terms of probation, he was a member of the “I Care” Advisory Council.
 
 Id.
 
 at p. 2, 15 So.3d at 76.
 

 |4The Court found that Judge Morvant “readily conceded” that he had performed the “underlying misconduct,” i.e., assessed the probationary fines while a member of the “I Care” Advisory Council.
 
 Id.
 
 at p. 7, 15 So.3d at 79. Further, the Court noted that “the ease of association between the monetary assessments and his council position leads to the perception that Judge Morvant misused the prominence of his judicial office to further his personal interests.”
 
 Id.
 
 at pp. 7-8, 15 So.3d at 79.
 

 In
 
 In re: Johnson,
 
 08-2397, (La.1/21/09), 1 So.3d 425, a case factually-similar to
 
 In re: Morvant,
 
 the Supreme Court upheld a finding by the Commission that Judge Donald Johnson, also a judge on the Nineteenth Judicial District Court, had violated Canons 1, 2A, 3A(1) and 5(B)(2) of the Code of Judicial Conduct, as well as La.C.Cr.P. arts. 895 and 895.1. Judge Johnson’s misconduct involved the ordering of criminal drug offenders to pay fines to various non-profit and charitable entities. The recipient organizations were not qualified to receive funding through probationary sentencing because they were not involved in any respect with the prevention and treatment of drug abuse permitted under La.C.Cr.P. art. 895.1(B)(7).
 
 Id.
 
 at pp. 9-10, 1 So.3d at 431-32.
 

 The case before us is distinguishable from both
 
 In re: Morvant
 
 and
 
 In re: Johnson.
 
 In those cases, the trial judge, either misapplied (Judge Morvant) or violated (Judge Johnson) a specific statute, La.C.Cr.P. art. 895.1(B)(7), by imposing judicial fines on defendants and directing those fines, independently, to entities that advanced the judge’s own private interests. Here, the
 
 Cy Pres
 
 doctrine is valid means of distributing residual damages in a class action lawsuit.
 
 See Cavalier v. Mobil Oil Corporation, supra,
 
 n. 1. The trial court neither used his position to generate the funds to be distributed nor acted independently in | ¡¡¡assessing the worthiness of the entities applying for the award. Rather the Special Master assessed each applicant and made a recommendation to the trial court. Additionally, the Special Master certified that his selection was based in accord with the Court’s guidelines, as outlined in
 
 Cavalier v. Mobil Oil Corporation, supra.
 

 Another distinction, albeit minor, is that the trial court here is as an
 
 ad hoc
 
 appointment of the Supreme Court, rather than an elected judge. The Supreme Court, in concluding Judge Morvant had
 
 *1164
 
 violated Canon 2B of the Code of Judicial Conduct, relied on the Commission’s finding that “his reputation was presumably enhanced by his public promotion of the “I Care” program since those associated with the organization and the East Baton Rouge School System could only have ben-efitted in the event he were reelected.”
 
 See In re: Morvant, supra,
 
 2009-0747, p. 5, 15 So.3d at 77. The trial court here has not publicly promoted the LBF and has no apparent political advantage by awarding it a one-time
 
 Cy Pres
 
 distribution.
 

 Canon 4C of the Code of Judicial Conduct states, in relevant part:
 

 A judge, subject to the proper performance of judicial duties, may engage in the following quasi-judicial activities, if in doing so the judge does not impair, limit or restrict his or her capacity to decide impartially any issue that the judge knows is likely to come before the judge:
 

 [[Image here]]
 

 C. A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge shall not personally solicit funds for such an organization or agency, or allow his or her name to be used in the solicitation of funds. A judge may make recommendations to the public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice.
 

 1 nClearly, the trial court is allowed to be a member of LBF provided he does not personally solicit funds for the organization or allow his name to be used in the solicitation of funds. Nothing in the record indicates the trial court solicited the funds or allowed his name to be used in the solicitation of the funds for the LBF.
 

 Finally, in denying the Special Master’s recommendation to award a distribution to the LBF, the trial court reasoned that, in view of
 
 In re: Morvant,
 
 “a state judge can no longer favor his own profession to the exclusion of other worthy charitable causes.” We do not agree. If that were the case, then the LBF could never be eligible for a
 
 Cy Pres
 
 distribution, regardless of the awarding judge’s affiliation with the LBF.
 

 DECREE
 

 Accordingly, for the above reasons, we reverse the judgment of the trial court and render judgment awarding the LBF 10% of the unused funds available as a
 
 Cy Pres
 
 distribution for efforts solely within the boundaries of Orleans Parish, as recommended by the Special Master.
 

 REVERSED AND RENDERED
 

 [1]
 

 . "The
 
 Cy Pres
 
 doctrine has been used to disburse proceeds of a class action lawsuit when the amounts owing to each individual plaintiff are exceedingly small and/or identification of the amount due each individual would be excessively difficult.... Further, distributing proceeds through
 
 Cy Pres
 
 satisfies class action goals by deterring similar conduct and disgorging the defendant of profits wrongfully obtained, and using those funds in a way that at least indirectly benefits the class members.”
 
 Cavalier v. Mobil Oil Corporation,
 
 2004-1543, pp. 6-7 (La.App. 4 Cir. 3/2/05), 898 So.2d 584, 588-89 (citing Susan Beth Farmer,
 
 More Lessons Learned from the Laboratories: Cy Pres Distributions in Parents Pat-riae Antitrust Actions Brought by State Attorneys General,
 
 68 FORD. L. REV. 361, 393-94 (1999)).
 

 The
 
 Cy Pres
 
 Award distribution at issue in this appeal arises from the class action certified in
 
 Adams v. CSX Railroads,
 
 615 So.2d 476 (La.App. 4th Cir.1993). The class action's liability and damages phases are discussed at length in
 
 In re New Orleans Train Car Leakage Fire Litigation,
 
 2000-0479 (La.App. 4 Cir. 6/27/01), 795 So.2d 364,
 
 writs denied,
 
 2001-2493 (La. 10/14/02), 827 So.2d 411,
 
 reconsideration not considered,
 
 2001-2492 (La. 11/22/02), 829 So.2d 1046,
 
 cert. denied sub nom., Nova Chems., Inc. v. Adams,
 
 538 U.S. 944, 123 S.Ct. 1623, 155 L.Ed.2d 484 (2003);
 
 In re New Orleans Train Car-Leakage Fire Litigation,
 
 2000-1919 (La.App. 4 Cir. 4/20/05), 903 So.2d 9,
 
 writ denied,
 
 2005-1297 (La.2/3/06), 922 So.2d 1171; and
 
 Adams v. CSX Railroads,
 
 2001-0114 (La.App. 4 Cir.
 
 *1162
 
 4/20/05), 902 So.2d 413,
 
 writ not considered,
 
 2005-1316 (La.2/3/06), 922 So.2d 1156.
 

 [2]
 

 . The LBF website states that, "[mjembers of the [LBF] are referred to as Fellows. Fellowship consists of judges, lawyers, and law professors whose professional, public and private careers demonstrate their dedication to the improvement of the administration of justice.”
 

 [3]
 

 . Article V, § 25(C) of the Louisiana Constitution of 1974 provides, in pertinent part:
 

 On the recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful and persistent misconduct relating to his official duty, willful misconduct and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that bring the judicial office into disrepute,....